**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank EIBLER, Clark Meunier, also known as Clark Cervetti, also known as Clark Meinier, and Edward Leep, Defendants–Appellants.**

**Nos. 92–1546, 92–1586 and 92–1611.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 23, 1993.

Decided April 29, 1993.

Brenda Atkinson, Asst. U.S. Atty., Office of the U.S. Atty., Crim. Div., Chicago, IL (argued), for U.S.

William T. White, Richard G. Lillie (argued), Corso, Lillie & Kelly, Cleveland, OH, for Frank Eibler.

Lawrence Dubin, J. Jeffrey Weisenfeld (argued), New York City, for Clark Meunier.

David W. Gleicher, Chicago, IL (argued), for Edward Leep.

Before POSNER and MANION, Circuit Judges, and WOOD, Jr., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

Clark Meunier, Frank Eibler, and Edward Leep have three things in common. Each participated in a long-lasting drug conspiracy, each pled guilty to federal offenses, and each has alleged error in his sentencing.

## I. BACKGROUND

During most of the 1980s, the Defendants–Appellants kept themselves busy by illegally distributing cocaine and marijuana. Meunier's role was twofold. Not only did he ferry cocaine and marijuana from Florida to Cleveland, Ohio, but he also grew marijuana on a farm he co-owned in Harvard, Illinois. Eibler was Meunier's distributor in Cleveland, Ohio, and Leep provided much of the labor on Meunier's farm.

This illicit arrangement unraveled in November 1989 when Eibler was arrested by Florida authorities for distributing cocaine. Shortly thereafter Leep approached the

Drug Enforcement Agency and informed on his boss, Meunier. Based in part on Leep's information, the Government obtained and executed several search warrants. This all led to a fifty-one count indictment in September 1991 against Leep, Eibler, Meunier, and two co-defendants not parties to this appeal.

Meunier was indicted on forty-six counts, Eibler on twenty-six, and Leep on one. After pleading not guilty to the various charges, each Defendant bargained with the Government and entered into a written plea agreement. Meunier and Eibler each pled guilty to conspiracy to possess with the intent to distribute cocaine and marijuana in violation of 21 U.S.C. § 846. Meunier also pled guilty to tax evasion in violation of 26 U.S.C. § 7201. Leep pled guilty to using the telephone in the commission of a drug trafficking offense in violation of 21 U.S.C. § 843(b).

Early in 1992, Judge Conlon sentenced the three Defendants. Leep received thirty months incarceration, Eibler received a sentence of 151 months, and Meunier was sentenced to 188 months imprisonment. Each Defendant filed a timely notice of appeal.

## II. CLARK MEUNIER

In their plea agreement, the Government and Clark Meunier calculated what they felt should be the applicable sentence according to the United States Sentencing Guidelines. The two parties concluded that pursuant to the Guidelines, Meunier had a Criminal History Category of I and an Offense Level of 34. Applying this information to the Guideline's Sentencing Table, the parties foresaw Meunier receiving a sentence between 151 and 188 months.

Meunier and the Government agreed, though, that the Government would make a motion requesting a lesser sentence pursuant to section 5K1.1. This section permits a judge to depart from the Guidelines when the Government files a motion stating that "the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1. Taking advantage of this clause, the agreement stip-

ulated that in return for Meunier's substantial assistance the Government would recommend "a term of imprisonment ... of 105 months."

A sentence of 105 months represents approximately a thirty percent decrease from the 151 months minimum sentence Meunier would receive without the Government's motion.

Meunier and the Government recognized in the plea agreement that their calculations regarding the appropriate sentence were "preliminary in nature and subject to revision by the Court in light of investigation by the United States Probation Officer and the Court's determination of the facts and the applicable law." The parties agreed also that the validity of the plea agreement was "not contingent upon the probation officer's or the Court's concurrence with the above calculations."

This language proved prescient, for after hearing new information from the probation officer the district court did indeed revise the sentencing calculations. In the Pre–Sentence Investigation Report, the probation officer stated that Meunier's Offense Level should be increased an additional two levels. The officer felt this was justified pursuant to Guidelines section 2D1.1(b)(1), which provides for a two-level enhancement if the defendant possesses a dangerous weapon during the commission of his crime.

At Meunier's sentencing hearing on March 5, 1992, an Internal Revenue Service Special Agent testified that Meunier kept almost two-dozen rifles and automatic weapons at his Illinois marijuana farm and was always armed while cultivating his crops. Judge Conlon accordingly found that the two-level firearms enhancement applied and upped Meunier's total Offense Level from the plea agreement's 34 to a total of 36. As the Offense Level increases so too does the applicable term of imprisonment. Due to the two-level enhancement Meunier found himself looking at a sentence of somewhere between 188 and 235 months.

The judge then asked the Government for its sentencing position and the Government stated that pursuant to the plea agreement it would recommend a "30 percent departure." This was not the first time the Government used the "30 percent" terminology, rather than speaking of "105 months" as the plea agreement specified. In the Government's "Motion for Downward Departure for Substantial Assistance," filed on February 14, 1992, the Government also requested the "Court to grant Mr. Meunier a 30% downward departure in this case because of his substantial assistance."

Neither Meunier nor his counsel objected to the Government's "30 percent departure" recommendations made at the sentencing hearing or in the motion for downward departure. While Meunier's counsel did use the "105 months" language, Meunier himself spoke of the plea agreement as reducing his sentence by a certain percentage. Speaking to Judge Conlon, Meunier argued that he deserved "a further 20 percent departure from the Guidelines" and said his information was "worth 50 percent."

Judge Conlon rejected any departure from the Guidelines. While she recognized that Meunier provided information to the Government, the judge felt the seriousness of Meunier's crimes offset any departure: "I'm looking at the ongoing nature of this conspiracy over a substantial period of time that grossed a million dollars at least, involved a lot of profit, involved sophisticated money laundering, and it's hard to ... imagine how many lives were affected by your activities in the drug world." The judge therefore rejected the Government's recommendation of a departure from the Guidelines and stayed within the applicable range. She did note Meunier's cooperation, however, and therefore sentenced Meunier to the minimum 188 months incarceration.

Before our court, Meunier asserts he is entitled to a new sentencing before a different judge. The crucial flaw in his current sentence, as Meunier sees it, is that the Government breached the plea agreement by recommending to Judge Conlon

that Meunier's sentence be reduced by "thirty percent" rather than being reduced to "105 months."

Admittedly, saying "thirty percent" rather than "105 months" would not make a bit of difference had Judge Conlon not enhanced Meunier's Offense Level by two levels due to his possession of weapons during his crimes. As we noted earlier, 105 months is a thirty percent decrease from the 151 months minimum sentence the Government and Meunier foresaw him receiving. When Meunier's sentence was upped to a minimum of 188 months, though, the terms "30 percent" and "105 months" were no longer interchangeable. A thirty percent reduction from 188 months is only 132 months, a far cry from 105 months.

■ Despite the difference between 30 percent and 105 months we shall not order a new sentencing for Meunier. In the recent case of *United States v. D'Iguillont*, 979 F.2d 612 (7th Cir.1992), we stated that "breach of a plea agreement cannot be raised for the first time on direct appeal." *Id.* at 614. Where a defendant fails to object to the breach at sentencing, he or she generally waives the issue. *Id.; United States v. Pryor*, 957 F.2d 478, 482 (7th Cir.1992); *United States v. Youmans*, 926 F.2d 747, 749 (8th Cir.1991) (per curiam); *United States v. Flores–Payon*, 942 F.2d 556, 558–60 (9th Cir.1991); *United States v. Jones*, 933 F.2d 1541, 1547 (11th Cir. 1991); *United States v. Argentine*, 814 F.2d 783, 790–91 (1st Cir.1987).

■ One exception to waiver, as stated in *D'Iguillont*, is plain error. 979 F.2d at 614; *see also* Fed.R.Crim.P. 52(b) (court may independently note plain errors). We have defined plain error as being an error that is "palpably wrong" and "likely to cause the outcome of the trial to be mistaken." *United States v. Kehm*, 799 F.2d 354, 363 (7th Cir.1986). A reversal on the basis of plain error "is justifiable only when the reviewing court is convinced that it is necessary in order to avert an actual miscarriage of justice." *United States v. Silverstein*, 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 792,

83 L.Ed.2d 785 (1985); *accord United States v. White*, 903 F.2d 457, 466–67 (7th Cir.1990); *see also United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (plain error exception to contemporaneous objection rule is to be used solely where miscarriage of justice would otherwise result); *United States v. Frady*, 456 U.S. 152, 163 & n. 14, 102 S.Ct. 1584, 1592 & n. 14, 71 L.Ed.2d 816 (1982) (plain errors are those which are particularly egregious). In the context of a plea agreement, to establish plain error a defendant "must show that but for the breach of the plea agreement his sentence would have been different." *D'Iguillont*, 979 F.2d at 613.

■ Even assuming the Government breached the plea agreement, Meunier cannot show plain error. Judge Conlon, after all, rejected the Government's recommendation that Meunier's sentence be reduced thirty percent. There is no reason to believe the judge would be more receptive to reducing Meunier's sentence by more than forty percent, i.e. from 188 to 105 months. We therefore hold that Meunier has waived his right to challenge the alleged breach of the plea agreement and we affirm Meunier's sentence.

## III. FRANK EIBLER

Frank Eibler and the Government agreed that they disagreed as to the quantity of drugs attributable to the conspiracy and Eibler's role within the conspiracy. As to the quantity of drugs, the Government stated in the plea agreement that the conspiracy distributed 2,901 kilograms of marijuana and 13.5 kilograms of cocaine. Under Guideline section 2D1.1 this put Eibler's Base Offense Level at 34. The Defendant stated he did not agree with the Government's calculation and that the issue would be resolved by the district court

at sentencing. Also left for the court's resolution was Eibler's role within the conspiracy. The Government stated in the plea agreement that Eibler was entitled to a three-level upward adjustment pursuant to section 3B1.1(b) for being a manager or supervisor of criminal activity. Eibler disagreed.

The Government and Eibler also failed to nail down Eibler's Criminal History Category. The plea agreement stated only that "[b]ased on what is known of the defendant's criminal history at the present time, defendant has a Criminal History Category of I or II." [1]

Eibler and the Government did agree that Eibler was entitled to a two-level reduction in his Offense Level pursuant to section 3E1.1 for having demonstrated acceptance of responsibility for his offense. The two sides also agreed that the Government would move the district court, pursuant to section 5K1.1, to depart downward from the applicable sentencing guideline range. The Government agreed to recommend Eibler's incarceration be "ten percent less than the low end of the applicable guideline range." This recommendation was conditioned on Eibler providing the Government with substantial assistance.

In the presentence report, the probation officer assessed Eibler as having a total Offense Level of 32. The officer had set Eibler's Base Offense Level at 34 but reduced it by two levels for acceptance of responsibility. Eibler was also calculated as having a Criminal History Category of I. The report noted, however, that this calculation did not include two recent crimes for which Eibler had been convicted but not yet sentenced. Those crimes included Eibler's attempt to bribe a state court judge with a payment of $100,000 in another drug case.

---

1. The Government states in its brief that the two sides agreed Eibler's Criminal History Category was II. Appellee's Br. at 13. In his brief Eibler states that the two sides agreed Eibler's Criminal History Category was I. Appellant's Br. at 3. The original plea agreement, contained in the record before us, seemingly shows that neither statement is entirely correct. The typed agree-

ment originally stated that the "defendant has a Criminal History Category of II." On the day the agreement was signed, however, the Assistant United States Attorney apparently wrote and initialed a change on the agreement. As revised, the agreement states that Eibler has "a Criminal History Category of I or II."

The presentence report also recognized that while the Government would recommend a ten percent downward departure based on Eibler's cooperation, it was also possible to depart upward. The probation officer noted that Guidelines section 4A1.3 allows for a departure where reliable information indicates the defendant's Criminal History Category does not adequately represent the seriousness of the defendant's past criminal conduct. Without taking these possible departures into account, the probation officer calculated that Eibler's applicable imprisonment range was 121 to 151 months.

On February 25, 1992, Eibler appeared before Judge Conlon for sentencing. At this proceeding, Eibler stated he would no longer contest the amount of drugs that the Government attributed to the conspiracy, thus implicitly agreeing his Base Offense Level was 34. The Government stated it stood by its sentencing memorandum, filed almost two weeks earlier. In that memorandum, the Government again reiterated that Eibler's Base Offense Level should be 34. Pursuant to the plea agreement, the Government recommended a ten percent downward departure in Eibler's sentence as reward for his substantial assistance. The Government stated that it took "no position" regarding the probation officer's suggestion that Eibler's Criminal History Category did not present an accurate picture. Instead, the Government said it agreed with the calculations contained in the presentence report, which put Eibler in a Criminal History Category of I.

After hearing from the Defendant and the Government, Judge Conlon calculated Eibler's total Offense Level at 32 and his Criminal History Category as being I. Neither party objected to the court's calculations. The court then considered, and rejected, the Government's motion to sentence Eibler to an imprisonment ten percent less than the low end of the applicable Guideline range.

In rejecting the Government's motion, the court stated that a Criminal History Category of I "substantially understated" Eibler's "criminal history achievements."

The court noted that Category I did not reflect Eibler's bribery and drug convictions in Florida. In effect, Eibler was in "the same category as a first offender who has never been in trouble before." Judge Conlon said Eibler's situation "normally would require a departure above the Guidelines." Rather than departing upward to accurately reflect Eibler's criminal history, or departing downward to accommodate the Government's request, the judge decided to simply stay within the applicable Guideline range and sentenced Eibler to 151 months imprisonment. Neither the Government nor Eibler objected.

On appeal, Eibler argues that the court abused its discretion in sentencing him to 151 months. Specifically, Eibler alleges the district court sentenced Eibler "as though he had actually been assessed at a criminal history category of II and further failed to take Appellant's substantial assistance and the government's recommendation for a downward departure into consideration." Appellant's Br. at 4.

Eibler's charge that the district court sentenced him as though he were in Criminal History Category II is mystifying. Judge Conlon placed Eibler in Category I and gave him a sentence within the Category I range. Eibler does not contend that Category I is inappropriate, nor does he dispute the judge's authority to sentence him within the 121 to 151 months range. As best we can divine, Eibler's real complaint is that Judge Conlon took cognizance of Eibler's Florida crimes and therefore refused to grant the Government's recommendation to depart downward.

■ Apparently Eibler believes that since the convictions did not figure into his Criminal History Category the judge should have pretended Eibler never committed the crimes. This argument is without merit. The Guidelines allow a judge to take note of crimes for which the defendant has been convicted although not yet sentenced. See U.S.S.G. §§ 1B1.4, 4A1.3; see also 18 U.S.C. § 3661 (no limitation shall be placed on background, character, and conduct information for sentencing purposes); cf. United States v. Lopez, 974

F.2d 50, 53 (7th Cir.1992) (though a fact cannot be used to exceed Guideline's range it can be used to select sentence within that range).

Even if Eibler's arguments had some merit, we could not grant him any relief for two reasons. First, Eibler has waived his objections by not raising them during the sentencing hearing and there is no "plain error" in Eibler's sentencing that would require us to reverse the district court. *See United States v. Atkinson*, 979 F.2d 1219, 1224 (7th Cir.1992); *United States v. Blythe*, 944 F.2d 356, 359 (7th Cir.1991).

■ Second, the Defendant essentially is challenging only one aspect of his sentencing, and that is Judge Conlon's refusal to grant him a downward departure. This court recognized in *United States v. Poff*, 926 F.2d 588 (7th Cir.1991) (en banc), that we have no jurisdiction to review a refusal to depart from the Guidelines when the refusal reflects an exercise of the judge's discretion. *Id.* at 590; *accord United States v. Shetterly*, 971 F.2d 67, 76 (7th Cir.1992); *see also* 18 U.S.C. § 3742 (outlining grounds for review of sentence). Judge Conlon was well aware that she had the authority to depart from the Guidelines, she merely exercised her discretion and refused to do so. We therefore have no jurisdiction over Eibler's appeal.

## IV. EDWARD LEEP

Edward Leep contends his right of "allocution" was denied and therefore he is entitled to a resentencing before a different district judge. Federal Rule of Criminal Procedure 32 directs that before a court imposes sentence it shall "address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Fed.R.Crim.P. 32(a)(1)(C). This is also known as "allocution." *Green v. United States*, 365 U.S. 301, 304, 81 S.Ct. 653, 655, 5 L.Ed.2d 670 (1961); *United States v. Franklin*, 902 F.2d 501, 507 (7th Cir.), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990); *see also* Wayne R. LaFave & Jerold H. Israel, *Criminal Procedure* § 25.1(f) (1984) (dis-

cussing right of allocution); Charles E. Torica, *Wharton's Criminal Procedure* § 539 (13th ed. 1992) (listing cases).

Leep does not dispute that Judge Conlon addressed him personally and allowed him to present information in mitigation of the sentence. Leep does not deny that he took advantage of this opportunity. In his brief, Leep states the court allowed him "to speak to his heart's content." Appellant's Br. at 5. During his allocution, Leep informed the court generally of his assistance to the Government in seven pending investigations and presented information on mitigating factors.

Despite this opportunity to personally address the court, Leep feels his right of allocution was improperly restricted. The error, in Leep's opinion, is that the judge did not allow Leep to make a statement *in camera*. Leep states that he was unable in open court to candidly detail the extent of his cooperation with the government in ongoing criminal investigations. Leep says "he would have exposed himself to serious danger" had he fully disclosed his cooperation. *Id.* at 6.

■ There is, however, no right to *in camera* allocution. Rule 32 provides that "the court *may* hear in camera" the defendant's statement "[u]pon a motion that is jointly filed by the defendant and by the attorney for the Government." Fed. R.Crim.P. 32(a)(1) (emphasis added). Here there was no jointly filed motion, and even had there been, the district court would still have retained the discretion to refuse the motion.

In *United States v. Barnes*, 948 F.2d 325 (7th Cir.1991), this court thoroughly examined the history and purpose of allocution. We concluded that district courts should apply Rule 32 "liberally, to freely grant defendants the right to make a statement prior to the imposition of sentence in all circumstances." *Id.* at 328–29. Where a trial court fails to comply with Rule 32, we have remanded the case for resentencing in order to give the defendant the opportunity to speak. *Id.* at 332; *United States v. Tuchow*, 768 F.2d 855, 875 (7th Cir.1985);

*United States v. Serhant,* 740 F.2d 548, 554 (7th Cir.1984).

Leep feels that the district court has ignored the mandate of *Barnes* to liberally apply Rule 32 by having refused his request to present a statement *in camera.* Liberally applying Rule 32, however, does not mean rewriting the rule so as to give a defendant a unilateral, unconditional right to privately address the court. *Cf. United States v. Aquilla,* 976 F.2d 1044, 1054 (7th Cir.1992) (defendant has no right to address court at any particular time in sentencing process).

Liberally applying Rule 32 means only giving the defendant a chance to address the court prior to the imposition of sentence in all circumstances. *Barnes,* 948 F.2d at 329; *see also United States v. Core,* 532 F.2d 40, 42 (7th Cir.1976) (district court is not required to allow allocution before revocation of probation but it is the "better practice" to do so). Leep had that chance.

Was Leep's chance to address the court sufficient? We think so. As we said in *Barnes,* "[t]he right to allocution is the right to have your request for mercy factored into the sentencing decision." 948 F.2d at 329. Although Leep may have felt it incautious to name names, he had adequate opportunity to stress his cooperation with federal officials in on-going investigations. Leep's cooperation, furthermore, was verified by the Government in its sentencing memorandum and by its statements in open court. The record plainly shows the district court heard and took note of Leep's cooperation and his request for mercy. The court, in fact, stated that it would have given Leep the maximum sentence of four years had it not been for Leep's "extensive cooperation." Instead, Leep received only thirty months. Leep was not, we hold, denied his right to allocution.

## V. CONCLUSION

Clark Meunier, Frank Eibler, and Edward Leep have each challenged their sentences for participating in a long-lasting conspiracy that distributed thousands of pounds of illicit drugs. For the reasons stated above, we hold Meunier has waived his objections, that we have no jurisdiction over Eibler's claim, and that Leep has no cause for complaint. We therefore dismiss Eibler's appeal and affirm the sentences of Meunier and Leep.