**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 99-21194

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ALBERTO SOZA,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas
No. H-95-142

March 13, 2001

Before JOLLY and DAVIS, Circuit Judges, and RESTANI, Judge.[*]

PER CURIAM:[**]

Pursuant to a plea agreement with the Government, defendant Alberto Soza pleaded guilty

to one count of money laundering in violation of 18 U.S.C. § 1956(a)(1)(A)(i) (1994). The

district court sentenced Soza to incarceration for 188 months. Defendant alleges that the

---

[*] Judge of the United States Court of International Trade, sitting by designation.

[**] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Government breached the sentencing recommendation provision of the plea agreement and seeks a remand for re-sentencing.  We affirm.

**FACTS**

Defendant Alberto Soza was indicted for money laundering and conspiracy to possess with intent to distribute marijuana, among other charges.  Soza entered into a plea agreement whereby he pleaded guilty to the money laundering charge.  In exchange for this plea, the Government agreed to dismiss the remaining counts against Soza, to recommend a concurrent sentence with Soza's state sentence in another case, and, most notably, to "recommend the bottom of the Guideline Range as determined by the Pre-Sentence Investigation Report."

The Presentence Investigation Report ("PSR") acknowledged the Government's recommendation that Soza "be sentenced at the bottom of the applicable guideline range."  The PSR also described Soza's extensive participation in various drug-trafficking activities beyond the charged money laundering.  As a result, although the Guideline Range for Soza's base offense level was calculated to be 63 to 78 months, the PSR noted the possibility of an departure above the guideline range "to reflect the actual seriousness of the defendant's conduct [in facilitating the commission of another offense]."  Soza filed an objection to the PSR, particularly to the suggestion that an upward departure may be appropriate under these circumstances.

At the sentencing hearing, Soza repeated the objection, arguing that increasing his money laundering sentence on the basis of his furtherance of other offenses would constitute double-counting, as the money laundering statute already contemplated the facilitation of other crimes.

The following exchange took place between the judge and prosecuting attorney after Soza's attorney had concluded the objection:

> Judge: Mr. Clark, do you have a response to that?
>
> Clark: We didn't respond because we felt that the probation report adequately addressed it. Although, I can recognize the quandary the Court is in by looking at how you can be money laundering and also be a party to a conspiracy to distribute marijuana. That would be one of the acts. But we've made a plea contract. Of course, we're going to stand by that.
>
> Judge: Your contract is not to say anything?
>
> Clark: We're adopting what the – if I felt the probation report didn't adequately address it, we would have added something. I'm sure [another Government attorney] would have beat me on the head to do it. We felt that adequately addressed it.

R9-3755-5 to 6. The judge adopted the PSR's findings of fact and application of the sentencing guidelines. Before pronouncing sentence, she offered the defendant an opportunity to speak, at which time Soza's counsel confirmed the existence of an outstanding motion and reaffirmed Soza's objection that there be no upward departure. The judge then pronounced Soza's sentence, explaining her rationale for an upward departure based on Soza's active involvement in the commission of other drug-related crimes, notwithstanding the dismissal of those charges. Thus, looking to the guideline range for drug-related offenses, the judge sentenced Soza to the highest end of that range, 188 months. At no point during the sentencing hearing did Soza object to the Government's statements or seek to withdraw his guilty plea.

## ANALYSIS

Soza argues that the Government's statements at the sentencing hearing, made in response to questioning from the trial judge, were fundamentally inconsistent with the obligation the Government assumed under the express terms of the plea agreement.[1]  Whether the Government breached a plea agreement is a question of law, requiring us to determine "whether the government's conduct is consistent with the parties' reasonable understanding of the agreement." United States v. Cerverizzo, 74 F.3d 629, 632 (5th Cir. 1996) (quoting United States v. Hernandez, 17 F.3d 78, 80-81 (5th Cir. 1994)).  The defendant bears the burden of proving by a preponderance of the evidence the underlying facts that establish a breach.  See United States v. Watson, 988 F.2d 544, 548 (5th Cir. 1993), cert. denied sub nom. Campbell v. United States, 510 U.S. 1048 (1994).  Because Soza did not raise his objection at the presentencing hearing, however, we may remand for re-sentencing only if the Government's actions give rise to plain error.  See United States v. Wilder, 15 F.3d 1292, 1301 (5th Cir. 1994) (citing United States v. Goldfaden, 959 F.2d 1324, 1327 (5th Cir. 1992)).  Under the plain error standard, "before an appellate court can correct an error not raised at trial, there must be (1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'"  Johnson v. United States, 520 U.S. 461, 466-67 (1997) (quoting United States v. Olano, 507 U.S. 725, 732 (1993)).

For an error to affect "substantial rights," the defendant must establish that "the error [was] prejudicial:  It must have affected the outcome of the district court proceedings."  Olano, 507 U.S. at 734.  In the context of a plea agreement, this standard requires a defendant to show that the alleged breach could have had an adverse effect on the sentence pronounced by the trial

_____

[1]     The Government's actions before the sentencing hearing took place are not at issue.

court. Phrased differently, an appellate court inquires into whether the trial judge would have rendered a lesser sentence had the Government fully complied with the relevant plea agreement. See, e.g., Cerverizzo, 74 F.3d at 633. See also United States v. Cashman, 216 F.3d 582, 588-89 (7th Cir. 2000); United States v. Cruz, 213 F.3d 1, 4 (1st Cir. 2000); United States v. Eibler, 991 F.2d 1350, 1354 (7th Cir. 1993).

Assuming arguendo that the prosecution's statements at the sentencing hearing violated the Government's commitment to recommend a sentence at the lower end of the guideline range,[2] we find that such statements do not rise to the level of plain error under the facts of this case. The transcript from the sentencing hearing makes clear that the trial judge was aware of the Government's recommendation pursuant to the plea agreement and that she would have imposed the same sentence regardless of the Government's response to Soza's objection at the presentencing hearing. First, the recommended sentence was stated clearly in the plea agreement and the PSR, both of which the judge had reviewed thoroughly, as evidenced by her references to specific details from those documents.[3] See R9-3755-2, 8, 10.

_____

[2] Although we need not decide whether the Government did, in fact, violate the defendant's reasonable understanding of the plea agreement, we note the confusion naturally brought about by the prosecution's responses to the trial judge's questions. The PSR supported an upward departure because Soza's money laundering had facilitated other offenses. See R1-3577- ¶ 65. The government endeavored to explain why it did not object to this recommendation before obliquely reminding the court of its plea agreement obligations. See R9-3755-5 to 6. When the court attempted to confirm whether the plea agreement required the Government to say nothing, the prosecution seemed to endorse the PSR's support for an upward departure. See id. at 6 ("We're adopting what the — if I felt the probation report didn't adequately address it, we would have added something."). Had the Government answered the judge's straightforward question with a clear explanation of its obligations under the plea agreement, this challenge may have been avoided.

[3] In referring to the trial judge's awareness of the Government's recommendation,

(continued...)

Second, the judge rejected a sentence within the guideline range of 63 to 78 months, deciding instead that an upward departure was warranted. In explaining her sentencing decision, the judge emphasized Soza's direct involvement in the distribution of large quantities of marijuana. See id. at 8. She noted that Soza's participation in the actual crime furthered by his money laundering was not an essential element of the money laundering charge. Citing United States Sentencing Guideline Manual § 5K2.9, the judge thus departed upwardly from the original guideline range "in order to fully sanction the seriousness of Mr. Soza's actual conduct." Id. She went further, however, to ensure that Soza's sentence would not be reduced should his possible appeal challenging her Section 5K2.9 rationale succeed. The judge provided an alternative basis for the upward departure under Section 5K2.0 because she found Soza's conduct to constitute "an aggravating factor of a kind and to a degree not adequately sanctioned by the applicable guideline." Id. at 9.

Finally, the judge reiterated the insufficiency of any sentence within the guideline range, deciding that Soza's sentencing range should be analogized to that under a conviction for marijuana distribution (151 to 188 months), and that he should be sentenced at the highest end of that range. See id. at 9, 11. The upward departure was an essential element of the judge's approval of the plea agreement and sentencing of the defendant: "Except for this Court's ability

---

³(...continued)
we do not mean to suggest that the Government is permitted to avoid its commitments to the defendant so long as the judge has notice of the position the Government is obligated to take under a plea agreement. Cf. United States v. Peglera, 33 F.3d 412, 414 (4th Cir. 1994) ("[T]he district court's understanding of the plea agreement's actual terms will not excuse the government's failure to live up to its end of the bargain."); United States v. Myers, 32 F.3d 411, 413 (9th Cir. 1994) ("It was insufficient that the court, by reading the presentence report and the plea agreement, was aware that the government had agreed to recommend a sentence at the low end of the guideline range.").

to upwardly depart to adequately sanction defendant's drug trafficking activities, the Court would otherwise have rejected the plea agreement in this case." Id. at 11.

In light of the above observations, viewed collectively, we cannot conclude that the Government's purported breach would have adversely affected Soza's sentence. The trial judge's reasoning and conclusions make clear that Soza would not have received a lesser sentence even if the Government had articulated its recommendation at the sentencing hearing. Cf. United States v. Flores-Sandoval, 94 F.3d 346, 352 (7th Cir. 1996) ("[E]ven were the government required by the agreement to recite orally its recommendation, its failure to do so did not prejudice [the defendant] and does not constitute grounds for resentencing."). Thus, the prosecution's actions in this case, assuming a breach of the plea agreement, do not constitute plain error.

We therefore **AFFIRM** Soza's sentence.