Jasen, J.
In each of these cases, it is claimed that the statutory right[1] of the defendant to be asked if he wishes to make a statement at the time of sentencing was in some manner abridged, We conclude that there was substantial compliance with the statutory requirement and, accordingly, affirm the orders appealed from.
The modern day allocution requirement can be understood only with reference to the early common law of crimes and criminal procedure. To begin with, the duty of the court to inquire at sentencing if the defendant wished to speak on his own behalf originated at a time when the. defendant’s rights were severely circumscribed. He had, for example, no right to counsel. (1 Stephen, History of the Criminal Law of Eng *489 land, 350, 398.) And perhaps most importantly, conviction erf a felony usually resulted in a sentence of death (p. 487), from which there was no right to appeal, save at the discretion of the crown (p. 309). Also, by operation of law, the convicted felon was placed in a state of attainder, a kind of civil death, precedent to execution. Among the consequences of attainder were that he could not be a witness or maintain an action. Nor for that matter cotild he perform any legal function, such as disposing of. his property by will or otherwise (1 Chitty, Criminal Law, * 725), the latter disability having the direst of consequences for the felon’s family and posterity as well. In fact, the offender’s property was forfeited to the crown and, as a further safeguard against future claims by his posterity, “ the blood of the offender is corrupted ” (pp. * 739, 740).
In consequence of the harsh effects of a felony conviction, certain palliatives were developed or invented. A large number of persons, although guilty, were simply exempted from the law’s extreme penalty as by pardon, granted or purchased, or by the immunity commonly known as “ benefit of clergy ” originally limited to clergymen, but later extended. (See Barrett, Allocution, 9 Missouri L. Bev. 115, 120-121.) There were others as well. A pregnant woman was reprieved until delivered of her child. Similarly, insanity of a prisoner after conviction was ground for reprieve. (9 Missouri L. Bev. 115, 120-121.)
Against this background then, the allocution assumed some importance and indeed came to be regarded as indispensable. (1 Chitty, Criminal Law * 700.) It afforded the prisoner perhaps his only meaningful opportunity to allege these and other grounds in arrest of judgment. Interestingly, however, neither the early common-law cáses nor the commentators mention a new trial or even resentencing as a remedy for denial of the right (pp. 116-124; see, also, Comment, 48 Iowa L. Bev. 172, 173, n. 9). Indeed, Chitty in his. commentary on the criminal law, while terming the allocation indispensable, observes that omission will be sufficient ground to reverse merely the attainder. (1 Chitty, Criminal Law, * 700.) This latter point is one often overlooked or misapprehended by subsequent writers and courts.
*490 It is not open to dispute that all the early common-law justifications or uses for the allocution have long since disappeared. Attainder, corruption of blood and forfeiture of estates as consequences of a felony conviction have been abolished. The power to pardon and to commute sentences reposes in the executive, is regulated by law, and has little, if any, connection with the judicial process. The immunity of “ benefit of clergy ” is a relic of a bygone age. The rights of pregnant or insane prisoners are sufficiently guarded by law and the right to appeal one’s conviction is today fundamental. Perhaps most importantly, and undercutting all the common-law justifications and uses for the allocution, is the fact that today the availability of counsel is a matter of right constitutionally assured. The only major justification remaining, it has been suggested, is the allocution’s therapeutic value, and on that basis its retention has been recommended. (Amer. Bar Assn. Project on Minimum Standards for Criminal Justice, Sentencing Alternatives and Procedures [Approved Draft, 1968], § 5.4, subd. [b], Commentary, pp. 254-255.)
Despite this erosion of its historical basis, the common-law right of allocution is still recognized in perhaps more than half of the American jurisdictions, either by Constitution, statute, court rule or decisional law. (Commentary, sufra.) In this State, the right has long been regarded as substantial and was first codified as section 480 of the Code of Criminal Procedure of 1881. Indeed, an early decision of this court held that omission to make the inquiry was ground for reversal of the judgment of conviction (Messner v. People, 45 N. Y. 1). Later cases make it clear, however, that a defendant’s sole remedy is to be remanded for resentencing. (People v. Nesce, 201 N. Y. 111, 114; People v. Craig, 295 N. Y. 116, 120.) But despite its deep roots in our jurisprudence, it is doubtful that in this State there ever was reason for the rule, let alone any justification in logic or policy for literalism in its application. For as Judge Peckham observed over 100 years ago, dissenting in Messner v. Peo fie (sufra, at p. 11), in this State prisoners always have been allowed counsel and the right to appeal has long been recognized.
*491 Be that as it may, the modern version of the allocution, found in CPL 380.50[2], embellishes upon its antecedents in common law and the Code of Criminal Procedure by requiring that the court afford the prosecutor, defense counsel and the defendant an opportunity to speak at sentencing.
In the cases before us, coneededly there was not literal compliance with the statute. In some cases, the allocution was phrased in the disjunctive, conveying the impression, or so it could reasonably be argued, that the defendant or counsel, but not both, were entitled to speak. In another case, the solicitation to speak was phrased ambiguously without specification of the addressee.
"While there was not conformity with the literal dictates of the statute, we nonetheless conclude that there was substantial compliance. While the allocution remains a substantial right, in light of the disappearance of its historical bases and its decreased significance today, we think this was sufficient in these cases. Although we do not insist on precision of verbal formulation and are prepared to overlook what we characterize here as inconsequential irregularity, each defendant should be afforded an opportunity to make a statement personally in his own behalf of whatever character.
In none of the cases now before us, however, does a defendant assert that he had anything to say or that he would have addressed the court at all had the allocution followed the statute more closely. In each case the record reveals that there was an invitation to speak. In each case counsel spoke for the defendant. None of the defendants expressed a wish to speak and none was deprived of the opportunity to be heard because counsel had already,-or was about to address the court on his behalf. *492 In sum there is here no proof that any defendant was denied the opportunity to say anything that he chose to say.
For the future it would be better, of course, for the sentencing court to make it unmistakably clear that the defendant and his attorney each has a right to address the court. This could be simply accomplished by advice to that effect, followed by direct invitations to speak addressed individually to the defendant and then to counsel.
For the reasons stated, the orders appealed from should be affirmed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Babin and Stevens concur. Judge Stevens taking no part in People v. Torres.
In each case: Order affirmed.

. CPL 380.50.

. “ § 380.50 Statements at time o£ sentence.
“ At the time of pronouncing sentence, the court must accord the prosecutor an opportunity to make a statement with respect to any matter relevant to the question of sentence. The court must then accord counsel for the defendant an opportunity to speak on behalf of the defendant. The defendant also has the right to make a statement personally in his own behalf, and before pronouncing sentence the court must ask him whether he wishes to make such a statement.
“ The court may, either before or after receiving such^'tatements, summarize the factors it considers relevant for the purpose of sentence and afford an opportunity to the defendant or his counsel to comment thereon.”