[No. A059897. First Dist., Div. Five. Feb. 23, 1994.]

In re SHANNON B., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
SHANNON B., Defendant and Appellant.

**COUNSEL**

Michael L. Mock for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Gerald A. Engler and Mark S. Howell, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**KING, J.—**

## I.  INTRODUCTION

"Do you have any legal cause to show why judgment should not be pronounced against you?"

Many attorneys have heard these words spoken prior to imposition of sentence in criminal proceedings, without giving much thought to what the question means. The inquiry, which is called "allocution," has ancient roots in the common law and is statutorily mandated in California. (Pen. Code, § 1200.) This case presents issues concerning the nature and scope of the right to allocution in California state courts and its application in proceedings against juvenile offenders.

We hold California's statutory right to allocution encompasses a right of defendants to make personal statements in their own behalf and present information in mitigation of punishment. We further hold allocution is not required in juvenile proceedings because juveniles have the opportunity to testify at dispositional hearings and address the court on the subject of disposition. Because the minor in the present case was afforded that opportunity and availed himself of it, we affirm the order committing him to the Youth Authority.

## II. BACKGROUND

The defendant, Shannon B., has a history of multiple contacts of considerable severity with the juvenile justice system, which culminated in the filing of a supplemental petition on the ground a previous disposition had not been effective. (Welf. & Inst. Code, § 777.) The petition alleged Shannon and a companion had left a residential treatment facility and had stolen an automobile and destroyed it following a high-speed chase. Shannon admitted the truth of the allegations, and the matter was set for a dispositional hearing.

At the dispositional hearing, Shannon presented a letter from him to the court discussing "what I think should happen to me." He proposed that "I stay in juvenile hall until I'm 18 . . . which is 7 months," during which time he would undergo therapy, work toward obtaining a diploma, seek a job, and receive a series of home passes. The letter summarized, "So I am humbly asking the court to give me this one last chance to prove to my family, the court, probation, and most importantly to myself that I can make it in society and not have to be institutionalized for the rest of my life."

Shannon also testified at the dispositional hearing and discussed the letter. He restated the letter's proposals, the goal of which he testified was "that I could slowly work my way back into the community, and back into my family, so I wouldn't have to be institutionalized for the rest of my life."

At the close of the hearing, the court heard argument from counsel as to the appropriate disposition and then committed Shannon to the Youth Authority, stating "he has not succeeded in any program. I have no programs left

which can handle him, and . . . I think that at this point the only resource [*sic*] I have is to send him to the Youth Authority . . . ." Defense counsel then asked, "May Shannon be heard briefly?" The court responded, "I don't think there is anything left to say. I've ruled, and that's the end of it." Shannon himself then interjected, "Your Honor, Your Honor," but the court interrupted him and said, "That's the end of it Shannon. This is [the] end of the line. That's the—it's happened now."

Shannon filed a timely notice of appeal from the order committing him to the Youth Authority.

## III. DISCUSSION

Shannon contends he was denied the right to allocution when the court refused to hear from him personally at the close of the dispositional hearing. Our resolution of this issue requires us first to determine the nature and scope of the right to allocution in California state courts as it applies to adult offenders, and then to consider whether the right should apply in juvenile proceedings.[1]

### A. *The Nature and Scope of Allocution*

#### 1. *The common law*

Allocution is deeply rooted in the common law of England. Its earliest mention in a published report was in 1689, where a judgment of attainder[2] was reversed after the defendant's execution because ". . . it does not appear that the party was asked what he could say why sentence of death shall not pass upon him; for possibly he might have pleaded a pardon." (*Anonymous* (1908 K.B.) 87 Eng.Rep. 175; see Barrett, *Allocution* (1944) 9 Missouri L.Rev. 115, 122 [hereafter *Allocution*]; *Green* v. *United States* (1961) 365 U.S. 301, 304 [5 L.Ed.2d 670, 673, 81 S.Ct. 653].) The right was subsequently set forth in published decisions from the 18th century onward (see *Allocution*, *supra*, at pp. 121-123) and in classic treatises on the law of England (4 Blackstone, Commentaries 375; 1 Chitty, The Criminal Law (2d ed. 1826), pp. 699-700).

---

[1]The Attorney General contends Shannon waived any right to address the judge by failing to assert it until after he was committed to the Youth Authority. We find no waiver. Given the sequence of events at the dispositional hearing, with the court pronouncing its order during the course of colloquy with counsel concerning the appropriate disposition, Shannon had no reasonable opportunity to speak out at the close of the hearing until after the court's pronouncement.

[2]At common law, attainder was "that extinction of civil rights and capacities which took place whenever a person who had committed treason or felony received sentence of death for his crime." (Black's Law Dict. (6th ed. 1990) p. 126, col. 2.)

The right to allocution emerged from an early time when criminal defendants had no right to counsel and could not testify in their own behalf, and with few exceptions the only punishment upon conviction of a felony was death. (See *Boardman* v. *Estelle* (9th Cir. 1992) 957 F.2d 1523, 1526; Note, *Procedural Due Process At Judicial Sentencing For Felony* (1968) 81 Harv.L.Rev. 821, fn. 2 [hereafter *Procedural Due Process*].) Allocution afforded convicted defendants their only opportunity to address the court. (*Boardman* v. *Estelle, supra,* 957 F.2d at p. 1526.) Its purpose was to permit the assertion of one of the few grounds for avoiding or delaying execution: the defendant had received a pardon from the crown, was insane, was pregnant, was not the person convicted, or was entitled to claim "benefit of clergy." (4 Blackstone, *supra,* at 375-376, 394-395; *Allocution, supra,* 9 Missouri L.Rev. at pp. 120-121.)

Benefit of clergy originally meant simply that the defendant was a member of the clergy and as such was exempt from secular liability. By the end of the 13th century, it applied to virtually all crimes. The doctrine subsequently developed into a subterfuge for avoiding the harshness of the death penalty. It was extended in the 14th century to anyone who could read (on the basis that literacy was evidence one was a cleric), and in 1706 to everyone. By the early 19th century (before its abolition in 1827), benefit of clergy was available to all laypersons, for one time only, for all felonies except where precluded by legislation. If conferred, the court could impose punishment other than death, including incarceration, transportation to the colonies, a fine or corporal punishment. (1 Chitty, *supra,* at pp. 666-674; Hall, Theft, Law and Society (2d ed. 1952) pp. 110-117, 139.) Thus, the punishment for many felonies had become discretionary, with a wide variety of sanctions available other than death, where "much is left to the wisdom of the court." (1 Chitty, *supra,* at p. 711.)[3]

Accordingly, the 19th century commentators viewed allocution more expansively, encompassing an opportunity to address the court in mitigation of conduct or to plead for mercy. (1 Chitty, *supra,* at p. 700; Waterman's Archbold, Practice, Pleading and Evidence in Criminal Cases (1853) p. 180-1; see Cohen, *Sentencing, Probation, and the Rehabilitative Ideal: The View From Mempa* v. *Rhay* (1968) 47 Tex.L.Rev. 1, 9 [hereafter *Sentencing*].) An 1826 treatise described allocution as follows: "It is now indispensably necessary, even in clergyable felonies, that the defendant should be asked by the clerk if he has any thing [*sic*] to say why judgment of death

---

[3]Punishment remained harsh. For example, the judgment for "drawing a sword on a judge," which was only a misdemeanor, was that the offender "shall be imprisoned during life, forfeit all his goods, and the profits of his estate, and that his right hand shall be cut off . . . ." (1 Chitty, *supra,* at p. 706.)

should not be pronounced on him; and it is material that this appear upon the record to have been done; and its omission, after judgment in high treason, will be a sufficient ground for the reversal of the attainder. On this occasion, he may allege any ground in arrest of judgment; or may plead a pardon, if he has obtained one, for it will still have the same consequences which it would have produced before conviction, the stopping of the attainder. If he has nothing to urge in bar, he frequently addresses the court in mitigation of his conduct, and desires their intercession with the king, or casts himself upon their mercy." (1 Chitty, *supra*, at pp. 699-700, fns. omitted.)[4]

## 2. *The state courts*

In the United States, the right to allocution has been adopted in more than half the states by statute, court rule or case law. (ABA Project On Standards for Criminal Justice, Standards Relating To Sentencing Alternatives and Procedures (Approved Draft 1971) pp. 254-255 [hereafter ABA Project]; Annot. (1964) 96 A.L.R.2d 1292, 1295; *Sentencing, supra*, 47 Tex. L. Rev. at p. 10, fns. 42 & 43.) In states where the right is not codified, ". . . the tendency is to regard the practice as a technical formality of little importance in modern criminal procedure, where other procedural devices afford the accused ample opportunity to protect himself at all stages of the proceeding." (Annot., *supra*, 96 A.L.R.2d at p. 1295.) However, model codes have encouraged preservation of the right. (3 ABA Standards for Criminal Justice std. 18-64(a)(iii) (2d ed. 1980) p. 447, & Commentary, p. 459 & fn. 41 [hereafter ABA Standards].) Modern justifications for retaining allocution despite the disappearance of its historical underpinnings have included "its therapeutic effect" (ABA Project, *supra*, at p. 255), the interest in "maximizing the perceived equity of the [sentencing] process" (ABA Standards, *supra*, p. 459), and "the view that the person convicted of a crime is not merely an object to be acted upon, but is a complex individual whose special needs and, quite possibly, whose special threat to the well-being of others, is not summed up by the word 'guilty.' " (*Sentencing, supra*, at pp. 10-11.)

## 3. *The federal courts*

In federal courts, allocution is prescribed by rule 32(a)(1) of the Federal Rules of Criminal Procedure, which provides in pertinent part: "Before

---

[4]It is said in *Procedural Due Process, supra*, 81 Harv. L.Rev. at pages 832-833, that "since the common law judge generally had no discretion as to the quantum of punishment in felony cases, the point of his question to the defendant was not to elicit mitigating evidence or a plea for leniency, but to give the defendant a formal opportunity to present one of the strictly defined legal reasons which required the avoidance or delay of sentencing . . . ." (Accord, *Boardman* v. *Estelle, supra*, 957 F.2d at p. 1533 (dis. opn. of Hall, J.); *People* v. *Gaines* (1981) 88 Ill.2d 342 [88 Ill.Dec. 795, 430 N.E.2d 1046, 1062].) As shown above, this is true only as to allocution in its earlier form. (See *Sentencing, supra*, at p. 9.)

imposing sentence, the court shall . . . [¶] . . . address the defendant personally and determine if the defendant wishes to make a statement and to present any information in mitigation of the sentence." Thus, in federal criminal proceedings ". . . allocution is still a vital part of the sentencing process." (*Boardman* v. *Estelle, supra*, 957 F.2d at p. 1526; see *Green* v. *United States, supra*, 365 U.S. 301.)

The constitutional status of the right to allocution is unclear. In *Hill* v. *United States* (1962) 368 U.S. 424, 428 [7 L.Ed.2d 417, 421, 82 S.Ct. 468], the United States Supreme Court held that a sentencing judge's failure to ask whether defendant has anything to say before sentence is imposed, although a violation of rule 32 of the Federal Rules of Criminal Procedure, is not an error of constitutional dimension subject to collateral attack. (368 U.S. at p. 428 [7 L.Ed.2d at p. 421].) But the court left open the question whether due process is violated when a defendant *requests*, and is denied, the opportunity to speak. (*Id.* at p. 429 [7 L.Ed.2d at p. 421]; see also *McGautha* v. *California* (1971) 402 U.S. 183, 218-219, fn. 22 [28 L.Ed.2d 711, 733, 91 S.Ct. 1454]; *Boardman* v. *Estelle, supra*, 957 F.2d at pp. 1526-1527.) The circuit court decisions are in conflict on the constitutional issue. (See *Boardman* v. *Estelle, supra*, 957 F.2d at pp. 1528-1529, and cases cited therein.) The most recent decision, in the Ninth Circuit, concluded that upon request a defendant has a constitutional right to speak prior to sentencing. (*Id.* at pp. 1529-1530.)

Despite this constitutional uncertainty, the United States Supreme Court has characterized the right to allocution as being of fundamental importance in criminal proceedings. Justice Frankfurter, writing for a plurality in *Green* v. *United States, supra*, 365 U.S. at page 304 [5 L.Ed.2d at page 673], commented that although major changes had evolved in criminal procedure since the seventeenth century, "None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." Justice Black, dissenting in the same case, commented, "A rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced . . . ." (*Id.* at p. 311 [5 L.Ed.2d at p. 677].) Justice Harlan later characterized the right as "elementary." (*United States* v. *Behrens* (1963) 375 U.S. 162, 167 [11 L.Ed.2d 224, 228, 84 S.Ct. 295] (conc. opn.).)

## 4. *California*

In California state courts, the right to allocution is provided by statute. Penal Code section 1200 states: "When the defendant appears for judgment

he must be informed by the court, or by the clerk, under its direction, of the nature of the charge against him and of his plea, and the verdict, if any thereon, and must be asked whether he has any legal cause to show why judgment should not be pronounced against him." Penal Code section 1201 provides in pertinent part: "He or she may show, for cause against the judgment: [¶] (a) That he or she is insane; . . . [¶] (b) That he or she has good cause to offer, either in arrest of judgment or for a new trial . . . ."[5]

"Cause" as set forth in Penal Code section 1201 is quite narrow, being limited to insanity or grounds in arrest (i.e., for nonrendition) of judgment, which may occur if there are facial defects in the accusatory pleading constituting grounds for demurrer. (Pen. Code, §§ 1104, 1185.) Are these the *only* matters that may be raised in California upon allocution, or is the defendant entitled to make a personal statement in mitigation of punishment?

The few existing cases on point conclude there is no right to make a personal statement, although the trial court has discretion to permit it.

In *People* v. *Cross* (1963) 213 Cal.App.2d 678, 681-682 [28 Cal.Rptr. 918], the appellant, relying on the federal rule, contended he should have been permitted to make a personal statement. The court acknowledged the federal approach permitting defendants to make personal statements and present mitigating information, but said, "No such extension of the concept of allocution is found in California . . . . The defendant Cross was represented by counsel and it was the function of that counsel, rather than of the defendant himself, to address the court on the defendant's behalf. [Citations.] It is, of course, within the discretion of the court to permit a defendant personally to speak on his own behalf before judgment is pronounced and it is conceivable that there may be circumstances where the failure to do so may be an abuse of discretion. But the record does not disclose any such abuse in the present case." (*Ibid.*)

*Cross* was followed in *People* v. *Sanchez* (1977) 72 Cal.App.3d 356, 359-360 [140 Cal.Rptr. 110], which held there was no abuse of discretion in failing to ask whether the defendant personally wished to speak, and in *People* v. *Wiley* (1976) 57 Cal.App.3d 149, 166 [129 Cal.Rptr. 13] (disapproved on another point in *People* v. *Wheeler* (1978) 22 Cal.3d 258, 287 [148 Cal.Rptr. 890, 583 P.2d 748]), which held there was no abuse of discretion where the trial judge allowed the defendant to speak but then interrupted him after finding his contentions unmeritorious.

A narrow reading of Penal Code sections 1200 and 1201 would seem to support the conclusions drawn in *Cross* and its progeny. But the history of these statutes indicates they are not to be construed so restrictively.

---

[5]There is no right to allocution, however, in death penalty cases. (See *post*, at pp. 1247-1248.)

California's statutory right to allocution was codified in 1850 in the first legislative session. In language almost identical to Penal Code section 1200, the Legislature provided, "When the defendant appears for judgment, he shall be informed by the Court, or by the Clerk under its direction, of the nature of the indictment, and of his plea and the verdict, if any there are, and shall be asked whether he have any legal cause to show why judgment should not be pronounced against him." (Stats. 1850, ch. 119, § 488, p. 311.) In language almost identical to Penal Code section 1201, the Legislature further provided, "He may show for cause against the judgment: [¶] First. That he is insane . . . . [¶] Second. That he has good cause to offer, either in arrest of judgment, or for a new trial . . . ." (Stats. 1850, ch. 119, § 489, p. 311.) Similar provisions appeared in the Criminal Practice Act of 1851 (Stats. 1851, ch. 29, §§ 456-457, p. 262) and in Penal Code sections 1200 and 1201 as enacted in 1872.

These provisions were drawn almost verbatim from the 1850 draft Code of Criminal Procedure of the State of New York, which was the source of California's 1850 statutes regulating criminal proceedings. (See Black & Smith, Some Account of the Work of Stephen J. Field (1881) p. 20; Kleps, *The Revision and Codification of California Statutes 1849-1953* (1954) 42 Cal.L.Rev. 766, 767.)[6] Notes to the draft New York code, included in the report of the Commissioners on Practice and Pleadings, stated that these provisions "are in conformity with the existing practice." (Code of Crim. Proc. of the State of N.Y., Reported Complete By the Commissioners on Prac. & Pleadings (1850) p. 259 [hereafter Draft N.Y. Code].) Thus, to determine the nature and scope of California's statutory right to allocution, we must examine the nature and scope of the "existing practice" of allocution in New York in 1850, upon which the Draft New York Code, and in turn the 1850 California statutes, were based.

The common law of England was adopted in New York by that state's 1777 Constitution. (Reppy, *op. cit. supra*, at pp. 24-25.) Thus, the law of New York included England's common law of allocution.

The first published decision in New York to set forth the right to allocution was *Safford* v. *People* (N.Y.Sup.Ct. 1854) 1 Parker's Crim.Rep. 474.

---

[6]The draft New York code was not adopted in New York until 1881. (Reppy, David Dudley Field Centenary Essays (1949) p. 36.) The allocution provisions of the 1881 code, former Code of Criminal Procedure sections 480-481 (1881 N.Y. Session Laws, ch. 442), were essentially the same as in the draft code. In 1971 they were replaced by Criminal Procedure Law section 380.50, which is patterned after rule 32(a)(1) of the Federal Rules of Criminal Procedure and "codifies generally accepted sentencing procedure including the defendant's common law right to an allocution." (Practice Commentary, 11A McKinney's Consolidated Laws of N.Y. Ann. (1983 ed.) § 380.50, p. 163; see generally, *People* v. *McClain* (1974) 35 N.Y.2d 483 [364 N.Y.S.2d 143, 323 N.E.2d 685].)

Citing various English authorities, *Safford* reversed a judgment in a noncapital case because ". . . it does not appear that the court demanded of the defendant what he had to say why judgment should not be pronounced against him." (*Id.* at p. 476.) The *Safford* opinion cited 1 Chitty, *supra*, at page 700, for the proposition that allocution "is indispensably necessary even in clergyable felonies" (*id.* at p. 477), and said, "The practice has its foundation in good sense and common justice, and the principle certainly applies to all cases of felony . . . ." (*Ibid.*) The New York Court of Appeals subsequently followed *Safford* and recognized the right to allocution in *Messner* v. *People* (1871) 45 N.Y. 1, 5-7. (See *People* v. *McClain* (1974) 35 N.Y.2d 483, 490 [364 N.Y.S.2d 143, 147, 323 N.E.2d 685] [later cases held remedy for noncompliance was resentencing, not reversal of conviction].)

A contemporary American edition of an English treatise, published in New York in 1853, described the right to allocution as follows: "In capital cases, also, whether sentence is to be passed, or only recorded, the clerk of arraigns at the assizes asks the prisoner—'A.B., have you anything to say why sentence of death should not be passed . . . against you;' upon which the prisoner may move in arrest of judgment, if that have not been already done, or he may address any other observations to the judge which he may think proper. In other cases, when sentence is about to be passed, the defendant may address the court in mitigation of punishment, as well as in arrest of judgment, whether he was tried and convicted or pleaded guilty . . . ." (Waterman's Archbold, Practice, Pleading and Evidence in Criminal Cases, *supra*, p. 180-1.) The American editor's notes cited the Chitty treatise on criminal procedure for the proposition that, "If he has nothing to urge in bar, he frequently addresses the court in mitigation of his conduct, and desires their intercession with the pardoning power, or casts himself upon their mercy." (*Id.* at p. 180-1, fn. 4.)

Thus, the existing practice in New York at the time of the Draft New York Code conformed with English common law as described by Chitty: allocution afforded the defendant an opportunity not only to show one of the traditional grounds for avoiding or delaying execution, but also to address the court in mitigation of conduct or to plead for mercy. (*Ante*, at pp. 1240-1241.) The allocution provisions of the Draft New York Code being "in conformity with the existing practice" (Draft N.Y. Code, *supra*, at p. 259), they must be viewed as fully encompassing, rather than restricting, the existing doctrine of allocution. The draft code's specification of certain grounds for cause against pronouncement of judgment—insanity or cause in arrest of judgment or for a new trial—cannot properly be construed as prescribing the *only* matters that could be raised upon allocution. The Draft New York Code encompassed the more expansive 19th century version of

allocution, which in turn is embraced by California's statutory right to allocution since it is based on the Draft New York Code.

### 5. *Conclusion*

We therefore conclude that *People* v. *Cross, supra,* 213 Cal.App.2d 678, inaccurately described the nature and scope of the statutory right to allocution in California state courts.  ■  Whether to permit a defendant to speak personally before pronouncement of judgment is not, as asserted in *Cross* and its progeny, within the discretion of the court. (*Id.* at p. 682; *People* v. *Sanchez, supra,* 72 Cal.App.3d at p. 359; *People* v. *Wiley, supra,* 57 Cal.App.3d at p. 166.) Rather, given the derivation of our statutorily prescribed right to allocution from the mid-19th century common law of New York and England, the inquiry whether a defendant "has any legal cause to show why judgment should not be pronounced against him" (Pen. Code, § 1200) gives the defendant the right not only to assert insanity or grounds in arrest of judgment or for a new trial (Pen. Code, § 1201), but also the right to make a personal statement and present information in mitigation of punishment.[7]

### B. *Application to Juvenile Dispositional Hearings*

Having determined the nature and scope of the right to allocution in California state courts as it applies to adult offenders, we now consider whether the right should apply in dispositional hearings for juvenile offenders under Welfare and Institutions Code sections 702 and 706.

■  Although the dispositional hearing is technically civil in nature (Welf. & Inst. Code, § 203; Code Civ. Proc., § 24; *In re Dennis M.* (1969) 70 Cal.2d 444, 462 [75 Cal.Rptr. 1, 450 P.2d 296]), and not all the requirements of criminal proceedings apply, ". . . the hearing must measure up to the essentials of due process and fair treatment." (*In re Gault* (1967) 387 U.S. 1, 30 [18 L.Ed.2d 527, 548, 87 S.Ct. 1428], quoting *Kent* v. *United States* (1966) 383 U.S. 541, 562 [16 L.Ed.2d 84, 97-98, 86 S.Ct. 1045].) The standard is "fundamental fairness." (*McKeiver* v. *Pennsylvania* (1971) 403 U.S. 528, 543 [29 L.Ed.2d 647, 659-660, 91 S.Ct. 1976].)  ■  Given the importance the United States Supreme Court has ascribed to allocution (*ante,* at p. 1242) and the various contemporary justifications for its retention (*ante,* at pp. 1241-1242), we believe that as a matter of fundamental fairness,

---

[7]We do not decide the constitutional issue whether due process is violated when a criminal defendant requests and is denied the opportunity to speak. (*Ante,* at p. 1242.) "[C]onstitutional issues are to be avoided when a case can be decided on other grounds." (*Reed* v. *City and County of San Francisco* (1992) 10 Cal.App.4th 572, 575 [12 Cal.Rptr.2d 647]; see also *Palermo* v. *Stockton Theatres, Inc.* (1948) 32 Cal.2d 53, 65 [195 P.2d 1].)

juvenile offenders, like adult offenders, should have the right to make a personal statement at the dispositional hearing and present mitigating information.

It is clear, however, that juvenile offenders *have* that right, independent of Penal Code section 1200, by statute and court rule. Welfare and Institutions Code section 706 provides in pertinent part that at the dispositional hearing the court shall receive "relevant and material evidence as may be offered." Rule 1492(b) of the California Rules of Court provides in pertinent part that the court shall receive and consider "any relevant evidence offered by the petitioner, the child, or the parent or guardian." Thus, the minor has the opportunity to present evidence relating to disposition. (*In re Mikkelsen* (1964) 226 Cal.App.2d 467, 471 [38 Cal.Rptr. 106].) The court may "receive and consider otherwise inadmissible evidence at the disposition hearing so long as it is relevant and material to the disposition issue." (*In re Michael V.* (1986) 178 Cal.App.3d 159, 170 [223 Cal.Rptr. 503], fn. omitted.)

This means that juveniles have an opportunity to *testify* at the dispositional hearing as to what disposition they feel is appropriate, much like adult offenders, upon allocution, have the right to make a *personal statement* and present mitigating information.

The situation is analogous to death penalty trials, where the defendant is statutorily authorized to testify at the penalty phase and address the jury on punishment and mitigation. (Pen. Code, § 190.3 [". . . evidence may be presented by both the people and the defendant as to any matter relevant to aggravation, mitigation, and sentencing . . . ."].) The California Supreme Court has held that, because capital defendants have this opportunity, they have "no right to address the penalty phase jury in allocution." (*People* v. *Clark* (1993) 5 Cal.4th 950, 1036 [22 Cal.Rptr.2d 689, 857 P.2d 1099], and see cases cited therein.) "In the noncapital sentencing context, a defendant does not generally have an opportunity to testify as to what penalty he feels is appropriate. Accordingly, *Ashe* [v. *State of N.C.* (4th Cir. 1978) 586 F.2d 334] might be correct in saying a defendant may not be denied that opportunity when he requests it. The sentencing phase of a capital trial, on the other hand, specifically provides for such testimony. The defendant is allowed to present evidence as well as take the stand and address the sentencer. Given this, we fail to see the need, much less a constitutional requirement, for a corresponding 'right to address the sentencer without being subject to cross-examination' in capital cases." (*People* v. *Robbins* (1988) 45 Cal.3d 867, 889 [248 Cal.Rptr. 172, 755 P.2d 355].)

If there is no need for allocution in death penalty trials because the defendant is allowed to testify at the penalty phase and address the sentencer, then likewise there is no need for allocution in juvenile dispositional

hearings because the juvenile has a similar opportunity. We hold, therefore, that because juveniles are authorized by statute and court rule to testify at their dispositional hearings and address the judge on the question of disposition, the "essentials of due process and fair treatment" (*In re Gault, supra,* 387 U.S. at p. 30 [18 L.Ed.2d at p. 548]) do not require a further right to allocution as provided by Penal Code section 1200. In the juvenile context, allocution would be superfluous.[8]

### C. *Application to This Case*

■ The only remaining question is whether Shannon was denied the opportunity to address the judge on the matter of disposition. The answer is no. Shannon testified in his own behalf and expressed his views as to the appropriate disposition. His testimony restated the proposal in his letter to the court, in which he asked for "one last chance" and urged a seven-month stay in juvenile hall during which time he would undergo therapy, work toward obtaining a diploma, seek a job, and receive a series of home passes. He had an ample opportunity to make a personal statement to the judge and present mitigating information, and he availed himself of that opportunity. The judge silenced him at the close of the hearing when he attempted to speak again, but this was not error, since he had already been permitted to testify without restriction. We conclude Shannon was afforded a sufficient opportunity to address the judge as to disposition.

### IV. DISPOSITION

The dispositional order is affirmed.

Peterson, P. J., and Haning, J., concurred.

---

[8]The right of juveniles and capital offenders to testify as to disposition differs from the allocution-based right to make a personal statement, in that the latter is nontestimonial—more in the nature of argument by the defendant personnally—and as such is not subject to cross-examination.

We recognize that in the noncapital adult setting, Penal Code section 1204 states aggravating and mitigating circumstances "shall be presented by the testimony of witnesses examined in open court . . . ." That provision might be broadly construed as affording the adult offender a nonallocution-based opportunity to testify as to appropriate penalty, were it not for the California Supreme Court's pronouncement in *People* v. *Robbins, supra,* 45 Cal.3d at page 889, that there is generally *no* such opportunity. In any event, section 1204, like sections 1201 and 1202, is based on the Draft New York Code (Draft N.Y. Code, *supra,* at pp. 259-260), indicating it does not alter the right of allocution encompassed by the Draft New York Code and embraced by our Penal Code.