# State of New York Court of Appeals

MEMORANDUM

This memorandum is uncorrected and subject to revision before publication in the New York Reports.

No. 49   SSM 4
The People &c.,
       Respondent,
     v.
George Brown,
       Appellant.

Submitted by Jody Ratner, for appellant.
Submitted by Kyle R. Silverstein, for respondent.

MEMORANDUM:

The order of the Appellate Division should be affirmed.

During the plea proceeding, defendant pleaded guilty and waived his right to appeal

pursuant to a negotiated sentence that was subsequently imposed.  His challenge to the

validity of his appeal waiver was properly rejected. Under the circumstances, as the Appellate Division concluded, defendant's contention that his CPL 380.50(1) right to an opportunity to make a personal statement at sentencing was violated is not reviewable because such a claim did not survive the valid appeal waiver. Although the statutory right is "deeply rooted" and "substantial," its value is largely personal to defendant (*see People v McClain*, 35 NY2d 483 [1974]). Defendant's claim does not fall among the narrow class of nonwaivable defects that undermine "the integrity of our criminal justice system . . . [or] implicate . . . a public policy consideration that transcends the individual concerns of a particular defendant to obtain appellate review" (*People v Muniz,* 91 NY2d 570, 574 [1998]; *see People v Allen*, 86 NY2d 599, 602-603 [1995]). Moreover, despite defendant's arguments to the contrary, a valid unrestricted waiver of appeal elicited during a plea proceeding can preclude appellate review of claims that have "not yet reached full maturation," including those arising during sentencing (*Muniz*, 91 NY2d at 575; *see People v Hidalgo*, 91 NY2d 733 [1998] [harsh and excessive sentence claim]; *People v Pacherille*, 25 NY3d 1021 [2015] [denial of youthful offender status]; *People v Callahan*, 80 NY2d 273 [1992] [procedural challenge to restitution sentence]), nor is this challenge to presentence procedures reviewable under the illegal sentence exception (*see Callahan*, 80 NY2d at 281).

WILSON, J. (dissenting):

In the year 399 BCE, Socrates, whom Plato lauded as the wisest and most just of all persons, was convicted of impiety and moral corruption of the Athenian youth. According to custom, he spoke at length before sentence was pronounced. The right of a condemned

defendant to speak at sentencing carried into the English common law, and into New York's common law and criminal procedure law.  It stopped with George Brown.

Because this error implicates the fundamental fairness of our criminal justice system, I dissent.

I

On March 17, 2017, Mr. Brown pled guilty to Attempted Assault in the First Degree in exchange for a negotiated sentence of seven years in prison with five years' post-release supervision and a permanent order of protection. He also agreed to waive his right to appeal.  On May 1, Mr. Brown appeared for sentencing.  The hearing was administered with swift, businesslike efficiency: the Court, prosecutor, defense counsel and Mr. Brown all understood the agreement they had reached.  After arraignment, the court clerk told Mr. Brown, on the record and in open court: "Before the Court pronounces the sentence, the People will be given an opportunity to make a statement, your lawyer will be given an opportunity to make a statement and you will also make a statement if you so wish."

Next, the People spoke, requesting that Mr. Brown be sentenced as promised.  Mr. Brown's counsel noted his objection to the Court's denial of Mr. Brown's motion to cut his hair and defer the mandatory surcharge. The Court interjected, asking: "Did he already waive his right to appeal?" The People responded in the affirmative, and the clerk produced the signed waiver. The Court glanced at it and asked the People if they wanted to say anything. "I already did," they responded. The Court then explained the order of protection for the victim, asking Mr. Brown, "Do you understand that?"  Mr. Brown spoke for the first time, answering yes but adding that he did not know the victim. At the previous

hearing, Mr. Brown had expressed concern that he could unknowingly violate the order of protection because the victim was a stranger. At the time, the Court had reassured him that as long as any contact was unintentional, he would not violate the order. But now, the Court simply asked, "Do you understand what I just told you?" Mr. Brown said he did.

The Court continued, reminding Mr. Brown that he was forbidden from carrying a firearm and instructing him to sign the order of protection, which Mr. Brown did.  Then, the Court sentenced Mr. Brown to seven years in state prison, five years post-release supervision, $300 mandatory surcharge, $25 crime victim's fee and a DNA fee of $50. Mr. Brown's counsel objected to the DNA fee, which the Court denied.  Then, Mr. Brown asked:

> "Am I going to get a chance to talk? This whole thing is bull. I don't understand this. It don't matter to me. Let's get this shit over with. Y'all, I love you all. I'll see y'all when I see y'all. Fuck that."

Mr. Brown never was permitted to make a statement at sentencing.

The majority concludes that Mr. Brown's waiver of the right to appeal waived his right to speak at sentencing.  Even if we assume that his appeal waiver was valid, I fail to understand how it could waive his right to speak at sentencing.  The statutory violation on which Mr. Brown's appeal is based occurred <u>after</u> he waived his right to appeal.  We have never held that an appeal waiver will bar a defendant from challenging future errors.  It is impossible to see how such a procedure could fall within our settled jurisprudence requiring that waiver be "knowing, voluntary and intelligent."  It is hard to see how it could comport with due process.  At the time he entered into his plea agreement and waived his right to

appeal, he had every reason to believe that part of the bargain included his right to address the court at sentencing. Additionally, the right of the defendant to an allocution is not only "a matter of fairness to the accused," but also implicates "the reality of fairness in the process itself," and thus should be among the narrow category of rights that survive the waiver of the right to appeal (*People v Seaberg*, 74 NY2d 1, 9 [1989]).

## II.

At common law, the right of allocution dates back to the 17th Century (*Green v US*, 365 US 301, 304 [1961]). In early modern England, the penalty for almost all felonies was death, and after sentence was pronounced the defendant was "placed in a state of attainder" and "regarded as dead in law" (Paul W. Barrett, *Allocution*, 9 Mo L Rev 115, 120 [1944]). As a result, a defendant could not serve as a witness, maintain an action, prepare a will or dispose of property (*id*). Attainder was not only punishment for the defendant, but also the defendant's family: all property was forfeited to the crown and any children lost their right to inherit and any titles of nobility (*id*). Given those harsh consequences, the allocution allowed the defendant to offer a defense or plead a recognized ground for reprieve (for example, pregnancy or insanity), the failure to offer the defendant the opportunity to speak was grounds for a reversal of the attainder (*id*. at 120-121).

The right of allocution is a long-standing one in New York, where courts adopted it directly from the common law. In the 1854 case *Safford v People*, the Saratoga General Term concluded that it was "undoubtedly" necessary that the court accord the defendant an opportunity "to say why judgment should not be pronounced against him" (1 Parker

Crim Rep 474, 476 [1854]). Describing the common law allocution requirement, the court reasoned that the "practice has its foundation in good sense and common justice" (*id*. at 477). We subsequently defined the allocution as a "substantial legal right" in *Messner v People*, stating that the "court has no more power to dispense with this rule or disregard it than it has any other legal rule, which the wisdom and experience of ages has found necessary for the protection of the innocent" (45 NY 1, 7 [1871]). The right was first codified as section 480 of the Code of Criminal Procedure in 1881[1] and is incorporated in the modern code in CPL 380.50. That provision governed Mr. Brown's sentencing and the sentencing of all criminal defendants convicted of a crime by our courts: "The defendant also has the right to make a statement personally in his or her own behalf, and before pronouncing sentence the court must ask the defendant whether he or she wishes to make such a statement."

With the advent of modern criminal procedure–particularly the right to counsel–denial of the right of allocution is no longer thought of as the basis for vacating a conviction, but the essential importance of the right is still widely recognized. "None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation," the US Supreme Court reasoned in *Green v US* (365 US at 304). "The most persuasive counsel" – the Court continued – "may not be able to speak for a defendant as the defendant might, with halting eloquence,

---

[1] Code of Criminal Procedure former § 480 provided that "[w]hen the defendant appears for judgment, he must be asked by the clerk whether he have any legal cause to show, why the judgment should not be pronounced against him."

speak for himself" (*id*). Similarly, in *People v McClain*, we stated "the right has long been regarded as substantial" (35 NY2d 483, 490 [1974]). Both US Supreme Court precedent and our own directs sentencing courts to "unambiguously address themselves to the defendant" and "leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing" (*Green*, 365 US at 305; *see also McClain*, [35 NY2d at 492] ["For the future it would be better, of course, for the sentencing court to make it unmistakably clear that the defendant and his attorney each has a right to address the court. This could be simply accomplished by advice to that effect, followed by direct invitations to speak addressed individually to the defendant and then to counsel"]).

Unlike early modern England, defendants in New York today do not face the death penalty upon conviction for a felony, nor are they placed in an indefinite state of attainder. But the statements they make in their allocution still have the potential to determine the length of their incarceration and the terms of their reentry. Even where there is a negotiated sentence as part of a plea, the Appellate Division may rely on the mitigating circumstances identified at sentencing, including the defendant's remorse, in deciding whether to reduce the defendant's sentence in the interest of justice (*see, e.g.*, *People v Wyrick*, 154 AD3d 1181, 1182 [3d Dept 2017]). The notes from the sentencing hearing are also among the materials weighed by the Board of Parole in determining whether incarcerated people are likely to live law-abiding lives (NY Executive Law § 259-i [2][c][A]; *Matter of Duffy v New York State Dept. of Corr. & Community Supervision*, 132 AD3d 1207 [3d Dept 2015]; *see also* Joshua I. Burger-Caplan, Comment, *Time of Desperation: An Examination of*

*Criminal Defendants' Experiences of Allocuting at Sentencing*, 51 Colum J L & Soc Probs 39, 56 [2017] [describing parole board's consideration of incarcerated person's statements at sentencing]). The Board is explicitly permitted to consider whether the individual in question has demonstrated remorse and insight into the crime (*Silmon v Travis*, 95 NY2d 470, 478 [2000]). As Mr. Brown argues, "an expression of remorse at a sentencing proceeding may be more influential than similar statements made before the Parole Board itself, because they evince an inmate's consistent" admission of guilt.

The allocution also serves a second, broader institutional purpose. Our criminal justice system is designed to evaluate guilt and mete out appropriate punishment in accordance with the principles of justice. The procedural protections afforded to defendants are essential to ensure that they are treated fairly and are not deprived of their liberty unjustly. Ironically, they also have the effect of silencing defendants, reducing them to the objects rather than the subjects of prosecution by the State. As one commentator has noted, "in millions of criminal cases often involving hours of verbal negotiations and dozens of page transcripts, the typical defendant may say almost nothing to anyone but his or her own attorney" (Alexandra Natapoff, *Speechless: The Silencing of Criminal Defendants*, 80 NYU L Rev 1449, 1450 [2005]). Allocution provides the one, unfettered opportunity for a defendant, now convicted of a crime, to address the court and make a public statement. Had Mr. Brown been afforded his right to a statement, he could have said he was sorry, or was not sorry, or was justified or not, or explained his actions or motivations in a way that would have engendered our sympathy, our disgust, or something else. Instead, by

terminating the proceeding while Mr. Brown was attempting to assert his right to make a statement at sentencing, the message the Court system sends is that he is an object, and that what the legislature and common law both have promised does not matter.

The majority's holding trammels the emphatically expressed intent of the Legislature, which mandated that the court "*must* ask the defendant whether he or she wishes to make a statement" (CPL 380.50 [1]). The language of that provision was modeled on Rule 32 (a) (1) of the Federal Rules of Criminal Procedure rather than the former Code of Criminal Procedure § 480 (Peter Preiser, Practice Commentary, McKinney's Cons Laws of NY Book 11A, CPL 380.50 [1971 ed]); *see also* Staff Comment of Temp St Commn on Rev of Penal Law and Crim Code, 1967 Proposed NY CPL 195.50 at 258). After *Green v US* but before the 1970 revisions to the Code, the Federal Rules were amended to make clear that the court must directly ask defendants whether they desire to make a statement (*id*). The CPL adopted the Federal Rule in this regard, issuing a compulsory directive to courts to address the defendant directly, not through counsel, to offer the defendant the chance to address the court (*id*). Here, the sentencing court did not merely fail to comply with the Criminal Procedure Law, but when Mr. Brown himself attempted to assert his right to speak, the sentencing proceeding was terminated.

III

There is a second reason why Mr. Brown's claim survived his waiver. As we have explained, an appeal waiver is the outcome of a "carefully orchestrated bargain" between the People and the defendant (*People v Thomas*, 34 NY3d 545, 558 [2019]). The promise

that Mr. Brown would be afforded an opportunity to speak at sentencing was a part of that bargain. Neither the Court nor the People believed that, through either his plea agreement or his appeal waiver, Mr. Brown had bargained away his right to speak at sentencing. Indeed, the Clerk advised him that he had retained the right, and the People did not say anything to the contrary. We have previously held that a defendant did not knowingly and intelligently waive the right to appeal her sentence where it "had not yet been declared by the court" at the time of the plea colloquy, five months before sentencing (*People v Maracle*, 19 NY3d 925, 928 [2012]). Similarly, in *People v Johnson* we held that a defendant did not knowingly and intelligently waive his right to appeal where – although the terms and conditions of the plea agreement were unequivocal and "the defendant was not informed that the court intended to further reflect on the appropriateness of the promised disposition"– the court ultimately decided "not to abide by the original promise" (14 NY3d 483, 486-487 [2010]). Mr. Brown's position is far stronger: the record unequivocally demonstrates that Mr. Brown did not bargain away his right to allocute, and everyone understood that he had not done so.[2]

---

[2] The cases cited by the majority to support the proposition that a valid, unrestricted waiver can preclude appellate review of claims arising during sentencing do not involve error by the court, but rather discretionary determinations (*see People v Hidalgo*, 91 NY2d 733, 737 [1998] [reasoning that "defendant did not know her specific sentence as the time of the waiver, (but) she did acknowledge the sentencing options the trial court could impose in its discretion" and "agreed … to abide by the court's exercise of discretion in determining her (lawful) sentence"]; *People v Pacherille*, 25 NY3d 1021, 1023 [2015] [holding that appeal waiver foreclosed defendant's challenge to County Court's consideration of and denial of his request to be adjudicated a youthful offender because it was "a matter left to the sound discretion of the sentencing court"]; *People v Callahan*, 80 NY2d 273, 281 [1992] [concluding that defendant waived objections to "the

III.

In accordance with our precedent, Mr. Brown's sentence should be vacated and his case should be remanded for resentencing so that he can finally be given an opportunity to speak on his own behalf (*see People v Nesce*, 201 NY 111, 114 [1911] [holding that defendant denied the right to allocution was not entitled to a new trial, but reversing the judgment remitting the case "to proceed upon the verdict according to the statute"]; *see also People v Craig*, 295 NY 116, 120 [1946]). The cost to the judicial system of granting him the right to allocute is the cost of transporting him to and from court. The cost to the system of turning its back on a statutory and common-law right is the loss of confidence in the system itself. In the words of one judge, the right to allocution "reaffirms human dignity in the face of severe punishment" (D. Brock Hornby, *Speaking in Sentence*, 14 Green Bag 2d 147, 154 [2011]; *see also* Joshua I. Burger-Caplan, Comment, *Time of Desperation: An Examination of Criminal Defendants' Experiences of Allocuting at Sentencing*, 51 Colum J L & Soc Probs 39, 51-52 [2017] [quoting formerly incarcerated person's statement that "I think opening your mouth just shows them that you're a human being who does consider things . . . I think that will bring some humanity back to you. I think the judge and the people in the court who see hundreds of bodies a day need to be reminded that these are people and not, like, inventory coming through, you know? I think that that can be lost whenever you do something too much"]). When courts deprive

---

adequacy of the procedures the court used to arrive at its (lawful) sentencing determination"]). The majority's proposition – that an appellate waiver can waive future statutory violations by the court – is wholly unsupported.

defendants of a final opportunity to speak on their own behalf, they deny them even the minimal modicum of dignity that the allocution affords, and the possibility of presenting a narrative of their life that goes beyond their worst acts.

Instead of hearing what Mr. Brown wanted to say, we have only a record of the immense anger and disillusion he felt when the judicial system pulled the rug out from under him. Why should Mr. Brown, or anyone reading the court transcript or this dissent, have confidence that the Court system operates by its own rules? I do not fault the sentencing court, which may have simply been confused, distracted, overburdened or inattentive, but two appellate courts, with the luxury of time to read the transcript, the briefs and the statutes, have decided that the rules do not matter. I dissent because Mr. Brown had the right to speak his mind at sentencing, did not waive that right, and I, for one, would have liked him to enter prison thinking the courts treated him fairly.

On review of submissions pursuant to section 500.11 of the Rules, order affirmed, in a memorandum. Chief Judge DiFiore and Judges Stein and Garcia concur. Judge Fahey concurs in result upon the ground that defendant's arguments are unpreserved. Judge Wilson dissents in an opinion, in which Judge Rivera concurs.

Decided May 6, 2021