## GREEN *v.* UNITED STATES.

Nos. 70 and 179.   Argued January 10–11, 1961.—
Decided February 27, 1961.

*James Vorenberg,* acting under appointment by the Court, 363 U. S. 839, argued the causes and filed a brief for petitioner.

*Robert Kramer* argued the causes for the United States. On the brief were *Solicitor General Rankin, Assistant Attorney General Wilkey, Beatrice Rosenberg* and *Julia P. Cooper.*

Judgment of the Court and opinion of MR. JUSTICE FRANKFURTER, joined by MR. JUSTICE CLARK, MR. JUSTICE HARLAN and MR. JUSTICE WHITTAKER, announced by MR. JUSTICE HARLAN.

Defendant, the petitioner here, in 1952 was convicted in the United States District Court for Massachusetts on a three-count indictment charging him with (1) entering a bank with intent to commit a felony, in violation of 18 U. S. C. § 2113 (a); (2) robbing the bank, also in violation of 18 U. S. C. § 2113 (a); and (3) assaulting or putting in jeopardy the lives of persons by use of a dangerous weapon while committing the robbery, in violation of 18 U. S. C. § 2113 (d). Five days later, after defendant's counsel had completed motions in arrest of judgment and for new trial, the district judge asked, "Did you want to say something?" whereupon counsel at some length invoked the trial judge's discretionary leniency. The defendant's age, family status, and physical condition were mentioned, as was the fact that he was then serving a sentence in a state penitentiary which would delay the time from which his federal punishment would run. Thereupon the trial judge, presumably relying upon a presentence probation report, observed that the defendant was a hardened criminal, that he had in the past committed other armed robberies, and that there was no warrant to believe that rehabilitation was possible. He then pronounced sentence as follows:

> "Theodore Green, the Court orders that on this indictment you be sentenced as follows: On Count 1 of the indictment 20 years, on Count 2 of the indictment that you be imprisoned for 20 years, and on Count 3 of the indictment that you be imprisoned for the period of 25 years, said prison sentence to run concurrent and to begin upon your release from prison upon the sentence you are now receiving under order of the State Court."

Subsequently, defendant was permitted to bring his appeal *in forma pauperis* which was dismissed by the Court of Appeals "for want of diligent prosecution." In two other later actions, defendant unsuccessfully brought proceedings under 28 U. S. C. § 2255 to vacate his sentence.

These two cases, here consolidated, arise out of two separate actions brought, some seven years after conviction, under Rule 35 of the Federal Rules of Criminal Procedure in an effort to set aside the sentence which petitioner asserts to be illegal. In No. 70, petitioner claims that the failure of the judge to inquire of the defendant if he had anything to say on his own behalf prior to sentencing rendered the subsequent sentence illegal under Federal Criminal Rule 32 (a).[1] In No. 179, petitioner questions the legality of the twenty-five-year sentence for aggravated bank robbery[2] when immediately prior to its imposition the judge had imposed a twenty-year sentence under another count of the indictment for the same offense without the elements of aggravation.

If Rule 32 (a) constitutes an inflexible requirement that the trial judge specifically address the defendant, *e. g.,* "Do you, the defendant, Theodore Green, have anything to say before I pass sentence?" then what transpired in the present case falls short of the requirement, even assuming that this inadequacy in the circumstances now before us would constitute an error *per se* rendering the sentence illegal.

---

[1] Rule 32 (a) in pertinent part provides:
"Before imposing sentence the court shall afford the defendant an opportunity to make a statement in his own behalf and to present any information in mitigation of punishment."

[2] "Whoever, in committing, or in attempting to commit, any offense defined in subsections (a) and (b) of this section, assaults any person, or puts in jeopardy the life of any person by the use of a dangerous weapon or device, shall be fined not more than $10,000 or imprisoned not more than twenty-five years, or both." 18 U. S. C. § 2113 (d).

The design of Rule 32 (a) did not begin with its promulgation; its legal provenance was the common-law right of allocution.  As early as 1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal.  See Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 (K. B.). Taken in the context of its history, there can be little doubt that the drafters of Rule 32 (a) intended that the defendant be personally afforded the opportunity to speak before imposition of sentence.  We are not unmindful of the relevant major changes that have evolved in criminal procedure since the seventeenth century—the sharp decrease in the number of crimes which were punishable by death, the right of the defendant to testify on his own behalf, and the right to counsel.  But we see no reason why a procedural rule should be limited to the circumstances under which it arose if reasons for the right it protects remain.  None of these modern innovations lessens the need for the defendant, personally, to have the opportunity to present to the court his plea in mitigation. The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.  We are buttressed in this conclusion by the fact that the Rule explicitly affords the defendant two rights: "to make a statement in his own behalf," and "to present any information in mitigation of punishment."  We therefore reject the Government's contention that merely affording defendant's counsel the opportunity to speak fulfills the dual role of Rule 32 (a). See *Taylor* v. *United States,* 285 F. 2d 703.

However, we do not read the record before us to have denied the defendant the opportunity to which Rule 32 (a) entitled him.  The single pertinent sentence—the trial judge's question "Did you want to say something?"— may well have been directed to the defendant and not to his counsel.  A record, certainly this record, unlike a play,

is unaccompanied with stage directions which may tell the significant cast of the eye or the nod of the head. It may well be that the defendant himself was recognized and sufficiently apprised of his right to speak and chose to exercise this right through his counsel. Especially is this conclusion warranted by the fact that the defendant has raised this claim seven years after the occurrence. The defendant has failed to meet his burden of showing that he was not accorded the personal right which Rule 32 (a) guarantees, and we therefore find that his sentence was not illegal.

However, to avoid litigation arising out of ambiguous records in order to determine whether the trial judge did address himself to the defendant personally, we think that the problem should be, as it readily can be, taken out of the realm of controversy. This is easily accomplished. Trial judges before sentencing should, as a matter of good judicial administration, unambiguously address themselves to the defendant. Hereafter trial judges should leave no room for doubt that the defendant has been issued a personal invitation to speak prior to sentencing.

In No. 179 petitioner contends that his sentence was rendered illegal because the district judge, after sentencing him to twenty years for bank robbery under Count 2, proceeded under Count 3 to sentence him to twenty-five years for the aggravated version of the same crime. The claim is that since the two counts did not charge separate offenses, the judge's power to sentence expired with the imposition of sentence under Count 2 and that five years should be remitted from petitioner's concurrent sentence.

The Government concedes that Count 3 did not charge a separate offense, see *Holiday* v. *Johnston,* 313 U. S. 342, 349, and there is every indication that the district judge was of this view. In his charge to the jury he stated:

"The third count is a different type of count. That is not a separate offense. I will speak to you later

of the manner in which you will handle the third count. That is not a separate offense . . . . That is not a separate count, to repeat, that is an aggravation of the second count, robbing the bank."

Although petitioner is technically correct that sentences should not have been imposed on both counts, the remedy which he seeks does not follow. This is not a case where sentence was passed on two counts stating alternative means of committing one offense; rather, the third count involved additional characteristics which made the offense an aggravated one—namely, putting persons in jeopardy of life by use of a dangerous weapon. Plainly enough, the intention of the district judge was to impose the maximum sentence of twenty-five years for aggravated bank robbery, and the formal defect in his procedure should not vitiate his considered judgment.[3]

*Affirmed.*

MR. JUSTICE STEWART, concurring.

I join in affirming the judgments. Rule 32 (a) does not seem to me clearly to require a district judge in every case to volunteer to the defendant an opportunity personally to make a statement, when the defendant has a lawyer at his side who speaks fully on his behalf. But I do think the better practice in sentencing is to assure the defendant an express opportunity to speak for himself, in addition to anything that his lawyer may have to say. I would apply such a rule prospectively, in the exercise of our supervisory capacity. See *Couch* v. *United States,* 235 F. 2d 519.

---

[3] Petitioner further complains of an improper charge to the jury on Count 3. Rule 35 does not encompass all claims that could be made by direct appeal attacking the conviction, but rather is limited to challenges that involve the legality of the sentence itself.

Mr. Justice Black, with whom The Chief Justice, Mr. Justice Douglas and Mr. Justice Brennan concur, dissenting.

I agree that Federal Criminal Rule 32 (a) makes it mandatory for a federal judge before imposing sentence to afford every convicted defendant an opportunity to make, in person and not merely through counsel, a statement in his own behalf presenting any information he wishes in mitigation of punishment and that failure to afford this opportunity to the defendant personally makes a sentence illegal. I agree too that the governing legal question in determining whether such an opportunity has been afforded under Rule 32 (a) is "whether the trial judge did address himself to the defendant personally," since it would be wholly artificial to regard this opportunity as having been afforded in the absence of a specific and personal invitation to speak from the trial judge to the defendant.[1] The very essence of the ancient common-law right called "allocution" which Mr. Justice Frankfurter recognizes as underlying Rule 32 (a) has always been the putting of the question to the defendant by the trial judge.[2]

I think the record in this case clearly shows that the defendant was denied this opportunity, that the sentence

---

[1] "After being convicted, the defendant is usually so crushed as to hesitate to make demands lest they bring increased punishment. The rule [Rule 32 (a)] contemplates no such demand, and clearly, without the necessity of any demand at that stage of the trial, the defendant's legal rights should be accorded to him by the court." *Mixon* v. *United States,* 214 F. 2d 364, 366 (Rives, J., concurring).

[2] An extensive and detailed review of the English and American common law and statutory cases on this subject led one author to begin his conclusion with the following sentence: "Today, as always, allocution is an authoritative address by the court to the prisoner as he stands at the bar for sentence." Barrett, Allocution, 9 Mo. L. Rev. 115, 232, at 254.

imposed upon him therefore was illegal and for this reason that the cause should, in accordance with Federal Criminal Rule 35, be sent back to the District Court for resentencing after compliance with Rule 32 (a). MR. JUSTICE FRANKFURTER refuses to take this course, stating that "we do not read the record before us to have denied the defendant the opportunity" to talk to the judge about his sentence. This conclusion apparently rests on the view that the trial judge's single question deemed pertinent to this subject—" 'Did you want to say something?'—may well have been directed to the defendant and not to his counsel." The opinion goes on to imply that maybe when the judge asked "you" the question he cast his eye or nodded his head in the defendant's direction, maybe the defendant saw the eye cast or the head nod, and therefore it "may well be that the defendant himself was recognized and sufficiently apprised of his right to speak and chose to exercise this right through his counsel." On this chain of perhaps possible, but purely imaginary happenings, plus the seemingly irrelevant fact that the defendant "raised this claim seven years after the occurrence," it is said that the petitioner "has failed to meet his burden of showing that he was not accorded the personal right which Rule 32 (a) guarantees, and we therefore find that his sentence was not illegal."

A careful examination of the record reveals the utter implausibility of these imaginative suggested additions to the transcript. The trial judge's bare question "Did you want to say something?" follows immediately upon a lengthy statement covering three printed pages by the counsel for a codefendant arguing that his motion for a new trial should be granted because of the weakness of the evidence, inconsistencies in testimony, and lack of credibility of a government witness. The colloquy in the four pages preceding that likewise does not touch upon the question of sentencing. Even if it is assumed

that the trial judge might have been so thoughtless as to address so unspecific a question to a layman at that point in the proceedings, can it seriously be believed that under such circumstances the defendant would have understood the question to be inviting him to speak on the subject of mitigating factors to be considered in sentencing even if the judge had nodded in his direction when asking "Did you want to say something?" Moreover, the answer "Yes, sir" and the succeeding statement came not from the defendant, but from his counsel (who was not the preceding speaker). The obvious implication is the fact explicitly admitted twice in the Government's brief in this case: that the question was addressed to defendant's counsel and not to defendant himself.[3]

I am forced to conclude that the actual holding in this case makes Rule 32 (a) mean far less for this particular defendant than the Rule is declared to mean, at least for defendants tried in the future. Judges are warned that hereafter their records must leave no doubt that a "defendant has been issued a personal invitation to speak prior to sentencing." This, I think, is the correct meaning of the Rule as it was adopted, and this defendant just like all others should be accorded his right under it. He should not be denied that right either because of his criminal record or because of fears conjured up about the number of prisoners who might raise the same question in the event of a decision in this defendant's favor. Bad men, like good men, are entitled to be tried and sentenced in accordance with law, and

---

[3] ". . . (R. No. 70, pp. 4–18). Then the court asked *defense counsel* if he wanted to say something. In response, counsel spoke for leniency in sentencing (R. No. 70, pp. 18–19)." Brief for the United States, p. 11. (Emphasis supplied.)

"Before sentencing, the court *specifically addressed counsel:* 'Did you want to say something?'" Brief for the United States, p. 31. (Emphasis supplied.)

when it is shown to us that a person is serving an illegal sentence our obligation is to direct that proper steps be taken to correct the wrong done, without regard to the character of a particular defendant or to the possible effect on others who might also want to challenge the legality of their sentences as they have the right to do "at any time" under Rule 35. If it has any relevance at all, the fact that there may be other prisoners in this country's jails serving illegal sentences would seem to me to make it all the more imperative that we grant appropriate relief in this case rather than search for some obviously dubious excuse to deny this petitioner's claim.

I do not understand why it is necessary or legally correct to defeat this prisoner's claim by invoking what appears to be a wholly new doctrine of burden of proof. What, may I ask, is the burden a defendant must meet to show he was not accorded the personal opportunity to address the judge before a sentence is imposed? Is it proof beyond a reasonable doubt, by a preponderance of the evidence, by the overwhelming weight of the evidence, or what? I suppose from Mr. Justice Frankfurter's opinion that it was the duty of this defendant to show under some standard that when the judge said "Did you want to say something?" he neither pointed his finger, cast his eye nor nodded his head in the defendant's direction, and that it was incumbent upon the defendant to make this proof even though the Government admitted that the question had been addressed to his counsel and not to the defendant himself. It would seem to me, even in the absence of the Government's admission as to the factual occurrence, that since when the question was asked defendant's counsel immediately made a statement, the fair inference is that if there was any "significant cast of the eye or . . . nod of the head," it was directed toward counsel who responded and not toward the defendant who said nothing. Yet it is said that defendant's claim must

be defeated because he failed to overcome an inference, without basis in logic or law, of a fact which has been expressly disclaimed by the Government in this case.

The language of MR. JUSTICE FRANKFURTER'S opinion does not jibe with the harsh result reached in refusing to accord to petitioner the benefit of Rule 32 (a). As he points out, that Rule embodies the practice of the English-speaking world for three centuries or more, based as he properly says upon the belief that, "The most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself." A rule so highly prized for so sound a reason for so long a time deserves to be rigorously enforced by this Court, not merely praised in resounding glittering generalities calculated to soften the blow of nonenforcement.

I would remand this case for resentence after compliance with Rule 32 (a).