HEANEY, Circuit Judge,
dissenting.
Twice Joseph Whitfield tried to exercise his right to testify at the penalty stage of his own trial. Yet, he was not permitted the opportunity to speak before the jury. I cannot agree that a defendant who asks directly, at two different times, to speak to the jury has somehow waived his right to testify. The trial court erred by not honoring Whitfield’s invocation of his right to testify, and Whitfield’s attorney was ineffective for failing to vindicate this right. Because Whitfield’s sentencing proceeding was infected with constitutional error, I dissent.[3]
I. TRIAL COURT ERROR
A criminal defendant’s right to testify in his own defense is a well-established and fundamental constitutional right. Rock v. Arkansas, 483 U.S. 44, 51-53, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987). “The right to testify on one’s own behalf at a criminal trial has sources in several provisions of the Constitution,” id. at 51, 107 S.Ct. 2704, including the Fifth, Sixth, and Fourteenth Amendments, id. at 51-53, 107 S.Ct. 2704. Because this case involves the penalty phase of a trial, the right also finds support in the Eighth Amendment. See Cope *1021 land v. Washington, 232 F.3d 969, 974 n. 2 (8th Cir.2000) (“Indeed, if there is any distinction between the guilt and penalty phase arguments, it would seem that there should be a more searching review of the penalty phase as the Eighth Amendment is implicated.”)
“Because the right to testify is a fundamental constitutional guarantee, only the defendant is empowered to waive the right.” United States v. Bernloehr, 833 F.2d 749, 751 (8th Cir.1987). I agree with the majority that a waiver of such a fundamental right may not be presumed from a silent record. Ante at 1013 (quoting Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). I further agree that in Whitfield’s case “[n]o explicit, clear or obvious waiver of the right to testify exists on the record.” Id. at 1016. Indeed, in stark contrast to affirmatively waiving his right to testify during the penalty phase, or even remaining silent on the issue, Whitfield vigorously attempted to exercise his right to testify, as is obvious from the following colloquy captured just before the penalty phase of the trial began:
THE DEFENDANT: Your Honor, can I say something to you sir?
THE COURT: Well, Mr. Whitfield, can it wait until the conclusion of the State’s evidence?
THE DEFENDANT: I just wanted to ask you a question.
THE COURT: Okay.
MS. MURPHY [DEFENSE COUNSEL]: I’d like the jury to not be brought in.
THE COURT: I hope they’re not out there.
MS. MURPHY: Can we close the door?
THE COURT: Can you hold them out there for a moment, Ms. Wafer? Okay, Mr. Whitfield.
THE DEFENDANT: Sir, for six years I’ve been going through this and I haven’t taken the stand yet. All right. I’ve never taken the stand before in my life. There’s no one in the world can talk about Joe Whitfield like Joe Whitfield can talk about Joe Whitfield. I would like to explain my situation and Joe Whitfield in its entirety without being interrupted, if I may, because my life is on the line.
MS. MURPHY: Your Honor, could we do this — could we make a record of— as an offer of proof outside the presence of the jury of what he would have testified to if he were testifying in Court, perhaps at a later point in the trial?
THE COURT: Let me respond to that in two ways, Mr. Whitfield. As I told you awhile back when we first got together, you have the right to testify or not' to testify and that right is yours alone.
THE DEFENDANT: Yes, sir.
THE COURT: And no inference can be drawn from your silence. As to whether you are called as a witness by your attorney, I do not wish to interfere with your relationship with your attorney. I leave that to you and she to work out.
If you are — the only circumstances under which you would be permitted to speak to the jury, as far as I can tell at this point in time, is if you are called as a witness and you would be subject to cross-examination and the usual rules of any witness.
So in other words, in terms of being allowed to address the jury in a narrative form, give a speech to the jury, I’m not prepared to allow that at this time. So that’s all I can tell you at this point in time.
Ms. Murphy, if I can interrupt, one other thing I might mention.
*1022 Mr. Whitfield, notwithstanding what the jury may assess and declare, the final sentence will be pronounced by me. I can assure you that you will be given the opportunity to say whatever you want to me before sentence is pronounced.
THE DEFENDANT: Your Honor, I’ve been sitting at this table — this is the second time looking like a dummy, you know. And I’ve been persecuted up here and I haven’t had the chance to even talk about me. Do you see what I’m saying?
THE COURT: I understand that. So I think I have to limit my response to what I’ve just indicated but we can revisit the issue when the State’s case is concluded. Okay?
THE DEFENDANT: Yes, sir.
(Tr. on Appeal, Vol. V at 1753-55.)
To summarize, Whitfield began by asking permission to speak to the trial judge. Instead of simply addressing an inquiry from a man who was quite literally defending his life, the trial judge’s response implied it was more important to move forward with the trial. Nonetheless, Whitfield persisted, and asked the judge if he could be permitted to speak to the jury. This can only be viewed as an unequivocal invocation of his right to testify,[4] testament that “[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.” Green v. United States, 365 U.S. 301, 304, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961).
Next, counsel’s request to make a record of what Whitfield would say was wholly ignored. Rather, the trial judge told Whitfield that he could not “give a speech to the jury,” and that he could only address the jury through being called as a witness by his lawyer. The court then reshaped the issue, shifting focus from Whitfield’s right to testify to his right of allocution, and assured Whitfield that despite what the jury may decide, the judge would make a final determination of sentence, and Whitfield would be permitted to talk to the judge directly at a later hearing. While it may have calmed Whitfield to think that he would later be able to talk directly to the ultimate decisionmaker, the trial court’s assurance was a clear and obvious misstatement: had the jury unanimously decided that Whitfield should receive life imprisonment, the trial judge could not have changed that sentence to one of death. See Mo.Rev.Stat. 565.030 (2002) (granting trial court no power to sentence capital defendant to death when jury is trier of fact in penalty phase and fixes punishment at life imprisonment). The importance of this point comes clearly into focus when one considers that the jury deadlocked eleven to one in favor of life imprisonment, even without Whitfield’s testimony.
Next, the state then put in its case in chief. At the end of the state’s case, one would expect the court to address Whitfield regarding his right and desire to testify, consistent with the court’s pledge that it would “revisit the issue when the State’s case is concluded.” (Tr. on Appeal, Vol. V at 1755.) The record reveals, however, that no discussion between Whitfield or his counsel and the court regarding Whitfield testifying took place following the state’s case in chief.
*1023 Defense counsel then put forth its case on behalf of Whitfield, never calling him to the stand. At the close of the defense case, when Whitfield had not testified, the court did not question Whitfield personally about the matter, or inform him of his continuing right to testify on his own behalf. Instead, the court merely asked Whitfield’s attorney if “[t]hat concludes all of the evidence in this case,” (Tr. on Appeal, Vol. VII at 2178), to which Whitfield’s counsel responded that her client was reserving his right to allocution before the court.[5] When a criminal defendant speaks personally about his desire to tell the jury of his life circumstances in a death penalty case, it is incumbent upon the trial court to either honor the defendant’s invocation of this fundamental right, or question the defendant personally to assure his waiver of the right. See El-Tabech v. Hopkins, 997 F.2d 386, 389 n. 3 (8th Cir.1993) (noting question of whether court must conduct on the record colloquy with criminal defendant to ensure knowing and voluntary waiver of right to testify is “an issue of recent debate in academia and in the courts”); cf. Miller v. Dormire, 310 F.3d 600 (8th Cir.2002) (granting prisoner habeas relief where no evidence defendant understood his fundamental right to jury trial and trial court failed to question defendant personally regarding waiver of this right). Neither was done here.
Counsel then gave their closing arguments. After argument was complete, the following exchange occurred:
THE COURT: Thank you, counsel.
Ladies and gentlemen, I will ask you to retire to consider your verdict. I have to apologize for continually sending you out at mealtime.
Mr. Whitfield, I have to ask you to retire in order.
THE DEFENDANT: Can I talk on my own behalf?
THE COURT: The jury will retire.
THE DEFENDANT: I’m not here to plead for my life. Get out of my face, woman. •
THE COURT: Mr. Whitfield, you have to be in order, please. I have to ask you to be silent.
(Tr. on Appeal, Vol. VII at 2224.)
During this exchange, Whitfield rose from his seat, and pulled away from his attorney. He was then surrounded by sheriffs. Despite the unquestionable clarity of Whitfield’s second request to “talk on his own behalf,” the court ignored his request and adjourned for the day, reconvening only after the jury returned its verdict.
In sum, it is clear to me, as it was to the district court, that Whitfield’s obvious invocations of his right to testify were not honored by the trial court; for the majority to hold otherwise stretches the governing law and the facts of this case beyond their elasticity. A finding that despite Whitfield’s two distinct requests to speak to the jury, he somehow, through his silence during the proceedings between those requests, indicated his desire not to testify, is an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2). Moreover, it is an unreasonable application of clearly established Supreme Court precedent, 28 U.S.C. § 2254(d)(1), to hold that a defendant waives his right to testify when he asks twice to speak to the jury *1024 during the penalty phase of the trial and gives no affirmative indications to the contrary. I would affirm the district court’s grant of habeas corpus relief on this claim.
II. INEFFECTIVE ASSISTANCE OF COUNSEL
A habeas petitioner is entitled to relief on an ineffective assistance of counsel claim where counsel’s performance was deficient and the petitioner was prejudiced by counsel’s performance. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, Whitfield contends that his lawyer was ineffective for not asserting his right to testify at the penalty phase, and that counsel’s failure was not based on any reasonable trial strategy. I agree.
Although the record in this case is voluminous, there is no evidence within it to suggest any possible strategy behind having Whitfield remain silent at the penalty phase of his trial. Even speculation does not shed light on the issue: tactical reasons for not testifying at the guilt phase, such as opening the door to evidence of Whitfield’s criminal history, are not present at the penalty phase, where the defendant’s criminal history can be introduced by the state. If anything, speculation suggests that, because the jury had not heard from Whitfield throughout the entirety of the trial, he should testify in order to humanize himself before the jury. As he aptly put it, “no one in the world can talk about Joe Whitfield like Joe Whitfield can talk about Joe Whitfield.” (Tr. on Appeal, Vol. V at 1753.) The record reveals no strategic basis for neglecting to exercise Whitfield’s right to testify at the penalty stage, and thus Whitfield’s counsel was ineffective for failing to vindicate the right.
Moreover, there is ample evidence in the record that Whitfield was prejudiced by his counsel’s deficient performance. The jury deadlocked eleven to one in favor of life. Had Whitfield been able to present his personal testimony, he may well have changed the mind of the holdout juror. See Strickland, 466 U.S. at 694, 104 S.Ct. 2052 (holding defendant entitled to relief when counsel’s errors “undermine confidence in the outcome” of the proceedings). Further, this is not a case like Foster v. Delo, 39 F.3d 873, 877 (8th Cir.1994) (en banc), where there was no evidence in the record as to what the defendant would have said if given the opportunity to testify.[6] On the contrary, Whitfield did address the court at a 1994 hearing on numerous defense motions, including a motion for a life sentence. In this statement, he speaks of his difficult life history and circumstances; his feelings toward his father (“[Ejvery time I look at my father I break up — I love you, Daddy.” (Supp. Tr. at 86)); his reputation in his community (“All the little kids in the neighborhood call me Uncle Joe. Whenever they got into trouble they’d come and talk to Uncle Joe.” (Id. at 99)); and the effect that his execution would have on his daughter (“My wife was murdered in August of 1988. My daughter is in an orphanage right now.” (Id.)). In short, Whitfield’s statement attests to his worth as a human being, loaded with emotion for his family and the children of his community, and concern for the crucial bond between father and daughter. Had he been permitted to present this image to the jury, the outcome of the preceding may have been different. Under our Constitution, Whitfield at least deserved the opportunity to speak. Failure to recognize as much was an omission that rendered his counsel ineffective. I would af *1025 firm the district court’s grant of habeas corpus relief on this claim as well.
CONCLUSION
Joseph Whitfield repeatedly asked the trial court to honor one request: allow him to testify on his own behalf. He attempted to exercise this most sacred constitutional right at least twice; nonetheless, the majority inexplicably concludes that, despite Whitfield’s two emphatic requests to speak, he somehow waived the very right he was seeking to exercise. The creation of such a legal fiction has no place in a case where the defendant’s life hangs in the balance. I agree with the district court that Whitfield was denied his right to testify at the penalty phase of his capital trial, and that his counsel rendered ineffective assistance by failing to call him as a witness. Accordingly, I dissent.

. Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 2443, 153 L.Ed.2d 556 (2002), effectively outlaws Missouri’s capital sentencing system by requiring that death penalty determinations be made solely by a jury, rather than a judge. I agree with the majority that because no Ring issue was certified for appellate review we ought not address the matter at this time. Still, the question of whether or not Ring has applicability to Whitfield's case remains open.

. The majority notes that Whitfield was “no stranger to criminal proceedings,” ante at 1016, and thus he should have been able to easily navigate the labyrinthian procedural nuances of when, where, and how to testify before a jury. I would hold Whitfield, a man with no legal training and brain damage as a result of several head injuries, to a somewhat lesser standard than the majority.

. Here again the trial judge gave Whitfield the impression that the court, and not the jury, would ultimately determine the sentence by stating "I will afford him ample opportunity to be heard before any sentence of death is passed, I can assure you.” (Trial Tr. at 2179.) Missing from this statement, of course, is an accurate statement of the governing law — that if Whitfield had convinced the jury to vote unanimously in favor of life imprisonment, the court could not legally impose a sentence of death.

. I note again that Whitfield's attorney asked to make a record of what he would testify to, but her request was ignored by the trial court. (Tr. on Appeal, Vol. V at 1754.)