# SUPREME COURT OF THE UNITED STATES

### ROBERT SORICH, TIMOTHY McCARTHY, AND PATRICK SLATTERY *v.* UNITED STATES

#### ON PETITION FOR WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

No. 08–410.   Decided February 23, 2009

The petition for a writ of certiorari is denied.

JUSTICE SCALIA, dissenting from denial of certiorari.

In *McNally* v. *United States*, 483 U. S. 350 (1987), this Court held that while "[t]he mail fraud statute clearly protects property rights, . . . [it] does not refer to the intangible right of the citizenry to good government." *Id.*, at 356.   That holding invalidated the theory that official corruption and misconduct, by depriving citizens of their "intangible right" to the honest and impartial services of government, constituted fraud.   Although all of the Federal Courts of Appeals had accepted the theory, see *id.*, at 364 (STEVENS, J., dissenting), we declined to "construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials." *Id.*, at 360 (majority opinion).   "If Congress desires to go further," we said, "it must speak more clearly than it has." *Ibid.*

Congress spoke shortly thereafter.   "For the purposes of this chapter, the term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services."   18 U. S. C. §1346. Whether that terse amendment qualifies as speaking "more clearly" or in any way lessens the vagueness and federalism concerns that produced this Court's decision in *McNally* is another matter.

Though it consists of only 28 words, the statute has been

invoked to impose criminal penalties upon a staggeringly broad swath of behavior, including misconduct not only by public officials and employees but also by private employees and corporate fiduciaries. Courts have upheld convictions of a local housing official who failed to disclose a conflict of interest, *United States* v. *Hasner*, 340 F. 3d 1261, 1271 (CA11 2003) *(per curiam);* a businessman who attempted to pay a state legislator to exercise "informal and behind-the-scenes influence on legislation," *United States* v. *Potter*, 463 F. 3d 9, 18 (CA1 2006); students who schemed with their professors to turn in plagiarized work, *United States* v. *Frost*, 125 F. 3d 346, 369 (CA6 1997); lawyers who made side-payments to insurance adjusters in exchange for the expedited processing of their clients' pending claims, *United States* v. *Rybicki*, 354 F. 3d 124, 142 (CA2 2003) (en banc); and, in the decision we are asked to review here, city employees who engaged in political-patronage hiring for local civil-service jobs, 523 F. 3d 702, 705 (CA7 2008).

If the "honest services" theory—broadly stated, that officeholders and employees owe a duty to act only in the best interests of their constituents and employers—is taken seriously and carried to its logical conclusion, presumably the statute also renders criminal a state legislator's decision to vote for a bill because he expects it will curry favor with a small minority essential to his reelection; a mayor's attempt to use the prestige of his office to obtain a restaurant table without a reservation; a public employee's recommendation of his incompetent friend for a public contract; and any self-dealing by a corporate officer. Indeed, it would seemingly cover a salaried employee's phoning in sick to go to a ball game. In many cases, moreover, the maximum penalty for violating this statute will be added to the maximum penalty for violating 18 U. S. C. §666, a federal bribery statute, since violation of the latter requires the additional factor of the employer's receipt of

federal funds, while violation of the "honest services" provision requires use of mail or wire services, §§1341, 1343. Quite a potent federal prosecutorial tool.

To avoid some of these extreme results, the Courts of Appeals have spent two decades attempting to cabin the breadth of §1346 through a variety of limiting principles. No consensus has emerged. The Fifth Circuit has held that the statute criminalizes only a deprivation of services that is unlawful under state law, *United States* v. *Brumley*, 116 F. 3d 728, 735 (1997) (en banc), but other courts have not agreed, see *United States* v. *Martin*, 195 F. 3d 961, 966 (CA7 1999) (*Brumley* "is contrary to the law in this circuit . . . and in the other circuits to have addressed the question"). The Seventh Circuit has construed the statute to prohibit only the abuse of position "for private gain," *United States* v. *Bloom*, 149 F. 3d 649, 655 (1998), but other Circuits maintain that gain is not an element of the crime at all, *e.g.*, *United States* v. *Panarella*, 277 F. 3d 678, 692 (CA3 2002). Courts have expressed frustration at the lack of any "simple formula specific enough to give clear cut answers to borderline problems." *United States* v. *Urciuoli*, 513 F. 3d 290, 300 (CA1 2008).

It is practically gospel in the lower courts that the statute "does not encompass every instance of official misconduct," *United States* v. *Sawyer*, 85 F. 3d 713, 725 (CA1 1996). The Tenth Circuit has confidently proclaimed that the statute is "not violated by every breach of contract, breach of duty, conflict of interest, or misstatement made in the course of dealing," *United States* v. *Welch*, 327 F. 3d 1081, 1107 (CA10 2003). But why that is so, and what principle it is that separates the criminal breaches, conflicts and misstatements from the obnoxious but lawful ones, remains entirely unspecified. Without some coherent limiting principle to define what "the intangible right of honest services" is, whence it derives, and how it is violated, this expansive phrase invites abuse by headline-

grabbing prosecutors in pursuit of local officials, state legislators, and corporate CEOs who engage in any manner of unappealing or ethically questionable conduct.

In the background of the interpretive venture remain the two concerns voiced by this Court in *McNally*. First, the prospect of federal prosecutors' (or federal courts') creating ethics codes and setting disclosure requirements for local and state officials. Is it the role of the Federal Government to define the fiduciary duties that a town alderman or school board trustee owes to his constituents? It is one thing to enact and enforce clear rules against certain types of corrupt behavior, *e.g.*, 18 U. S. C. §666(a) (bribes and gratuities to public officials), but quite another to mandate a freestanding, open-ended duty to provide "honest services"—with the details to be worked out case-by-case. See generally Brown, Should Federalism Shield Corruption?—Mail Fraud, State Law and Post-*Lopez* Analysis, 82 Cornell L. Rev. 225 (1997).

Second and relatedly, this Court has long recognized the "basic principle that a criminal statute must give fair warning of the conduct that it makes a crime." *Bouie* v. *City of Columbia*, 378 U. S. 347, 350 (1964). There is a serious argument that §1346 is nothing more than an invitation for federal courts to develop a common-law crime of unethical conduct. But "the notion of a common-law crime is utterly anathema today," *Rogers* v. *Tennessee*, 532 U. S. 451, 476 (2001) (SCALIA, J., dissenting), and for good reason. It is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail. "How can the public be expected to know what the statute means when the judges and prosecutors themselves do not know, or must make it up as they go along?" *Rybicki*, *supra*, at 160 (Jacobs, J., dissenting).

The present case in which certiorari is sought implicates two of the limiting principles that the Courts of Appeals

have debated—whether the crime of deprivation of "honest services" requires a predicate violation of state law, and whether it requires the defendant's acquisition of some sort of private gain.  The jury was instructed that petitioners, who were employed by the city of Chicago, were obliged, "[a]s part of the honest services they owed the City and the people of the City of Chicago," to abide by a laundry list of "laws, decrees, and policies," including a 1983 civil consent decree entered into by the city which barred patronage hiring for some city jobs.  App. to Pet. for Cert. 137–140.  The Seventh Circuit approved the instruction, again rejecting the Fifth Circuit's violation-of-state-law principle.  "It may well be," the court said, "that merely by virtue of being public officials the defendants inherently owed the public a fiduciary duty to discharge their offices in the public's best interest."  523 F. 3d, at 712.  And though petitioners received no direct personal benefit from the patronage they doled out on behalf of their political masters, the Seventh Circuit found it sufficient that the patronage *appointees*—who were not charged in the scheme—accrued private gain.  *Id.*, at 709.

Finally, in addition to presenting two of the principal devices the Courts of Appeals have used in an effort to limit §1346, the case also squarely presents the issue of its constitutionality.  The Court of Appeals rebuffed petitioners' argument that if §1346 really criminalizes all conduct that is not "in the public's best interest" and that benefits *someone*, it is void for vagueness.  The court cited two prior Circuit decisions which, it said, "provided sufficient notice."  *Id.*, at 711.

It may be true that petitioners here, like the defendants in other "honest services" cases, have acted improperly.  But "[b]ad men, like good men, are entitled to be tried and sentenced in accordance with law."  *Green* v. *United States*, 365 U. S. 301, 309 (1961) (Black, J., dissenting).  In light of the conflicts among the Circuits; the longstanding

confusion over the scope of the statute; and the serious
due process and federalism interests affected by the ex-
pansion of criminal liability that this case exemplifies, I
would grant the petition for certiorari and squarely con-
front both the meaning and the constitutionality of §1346.
Indeed, it seems to me quite irresponsible to let the cur-
rent chaos prevail.