WOOD, Circuit Judge,
dissenting.
The only question presented in this appeal is whether the district court committed plain error by denying defendant Billy Covington his right of allocution, which is guaranteed by Federal Rule of Criminal Procedure 32(i)(4)(A)(ii). My colleagues conclude that no error, plain or otherwise, occurred; in fact, they see the district court’s interventions as helpful efforts to focus Covington’s statements. In my view, the record shows exactly the opposite: The judge’s interruptions had the effect of cutting off Covington’s efforts to make his central points and in doing so, deprived Covington of his right “to speak or present any information to mitigate the sentence.” Id. I therefore respectfully dissent.
The right of allocution codified in Rule 32 is one that is personal to the defendant. It is critical to the integrity of the sentencing process; as the Supreme Court has explained, “[t]he most persuasive counsel may not be able to speak for a defendant as the defendant might, with halting eloquence, speak for himself.” Green v. United States, 365 U.S. 301, 304, 81 S.Ct. *912 653, 5 L.Ed.2d 670 (1961). Following that lead, this court has elaborated on the value of the allocution, noting that it is a procedural protection “designed to enable our system of justice to mete out punishment in the most equitable fashion possible.” United States v. Barnes, 948 F.2d 325, 328 (7th Cir.1991); see also Kimberly A. Thomas, Beyond Mitigation: Toward a Theory of Allocution, 75 FoRDHAM L.Rev. 2641, 2644 (2007) (An allocution allows a defendant not only to provide “mitigating fact[s]” but also to discuss important “details” about his life that allow a court to impose a “nuance[d]” and “just sentence that is appropriate to the particular defendant.”). From the perspective of the defendant, the allocution “has value in terms of maximizing the perceived equity of the process.” Id.
In this case, the district court defeated both the broader purpose and the practical utility of allocution by refusing to let Cov-ington speak for himself and instead confining Covington’s contribution to a brief question-and-answer session. Although the court did invite Covington to speak, as is required by Green, it interfered almost immediately when he tried to take advantage of that invitation. Rather than listening for at least a few minutes (and note that, as the majority concedes, only six pages of double-spaced transcript were needed to record Covington’s statements), the court interrupted him and demanded that Covington discuss the topics that the district court was interested in rather than raise the points that Covington himself thought should be considered as mitigating factors. When Covington indicated that he would get to the court’s questions in the course of his statement, the court cut him off, saying “No, tell me right now.”
When it comes to allocution — the defendant’s own chance to tell his story — it is hard to see how incessant interruptions from the court could ever be helpful. This is not to say that the court has to listen for hours to a wordy defendant, and it certainly is not to say that the court is obliged to respond in any particular way to the defendant’s statements. But the court does have an obligation to listen, not to talk, during the time that the Rules give to the defendant. Even if, after some time has elapsed, the court is entitled to invite the defendant to address a subject that interests it, Covington’s is not a case in which the court’s interventions can fairly be characterized as helpful “attempt[s] to get him back on track.” Opinion at 910. Earlier in the sentencing proceeding, Covington’s lawyer, Rosalie Guimaráes, had tried to argue that Covington was mentally unstable and attempting to engage in the practice known as “suicide by police.” See generally “Suicide by cop,” en.wikipe-dia.org/wiki/Suicide_by_cop. The court responded to Guimaráes by saying “I am willing to accept your proposition that this may be suicide by police. I am willing to accept that. The question is, what difference does that make in sentencing?” During Covington’s allocution, the court’s questions returned to the same issue: “[Q] Why did you go into the bank, Mr. Coving-ton? ... [A] I went into the bank to kill myself.” And then again, a bit later, “[Q] Do you still feel that way? Do you have times when ... you wanted to end your life?” Ultimately, the court justified the imposition of a near-top-of-the guidelines sentence by reference to his suicidal tendencies, specifically mentioning Coving-ton’s responses to his questions. The court thus knew about and was considering the effect of Covington’s mental health problems before the allocution began, but it inexplicably steered Covington away from talking about points that Covington thought would be mitigating evidence addressing that very problem. It then used the responses it had elicited from Coving-ton to justify a higher sentence.
*913 I am troubled by the way in which the majority reads the end of Covington’s statement. As they put it, “When Coving-ton finished, the court concluded by thanking him and then inviting his wife to speak on his behalf.” Opinion at 3. But the full transcript leaves me, at least, with a very different picture. After the court’s first interruption, Covington continued his allo-cution for a meager 12 additional lines. Then the following exchange took place:
THE COURT: Let me ask you another question. Are the flashbacks the reason that you use drugs?
THE DEFENDANT: I have tried to kill myself with them. I have tried to kill myself several times. I’ve tried to OD to [sic] drugs. And I tried — I get — smoked some drugs and, then, I tried to cut my — tried to hang myself. If I get high, I tried to cut my wrists because I can’t stand the pain.
THE COURT: I have one last question and, then, I am going to hear from your wife. Do you still feel that way? Do you have times when you have been in custody, that you wanted to end your life?
THE DEFENDANT: Yes.
THE COURT: Okay. Thank you, Mr. Covington. His wife?
Tr. (July 14, 2011) at 29 (emphasis added). This does not strike me as an innocuous “thank you” followed by a request for the next witness. It indicates instead that the court had no interest in listening to anything else Covington had to say, that it asked two final questions, and then it cut him off. Nothing in this passage suggests that “Covington finished.”
Although appellate courts are rightly cautious about finding plain error, I believe that it occurred here. This court, as well as other circuits, have repeatedly emphasized the value of the allocution, and so it should have been clear to the sentencing judge that he had an obligation to allow Covington to finish his statement. That is so even if the judge was bored by what Covington was saying, or did not find his comments to be particularly mitigating, or was impatient to wrap the proceedings up. (I emphasize again that there is no evidence in this record that Covington took up an undue amount of time; had the judge said anything to that effect when he cut Covington off, this would be a different case.) Barnes provides this court’s fullest and clearest articulation of the value of the allocution right. There, we noted that:
The right of allocution is minimally invasive of the sentencing proceeding; the requirement of providing the defendant a few moments of court time is slight. Because the sentencing decision is a weighty responsibility, the defendant’s right to be heard must never be reduced to a formality. In an age of staggering crime rates and an overburdened justice system, courts must continue to be cautious to avoid the appearance of dispensing assembly-line justice.
Barnes, 948 F.2d at 331 (emphasis added). Barnes also underscored the value of allo-cution in ensuring that punishment is meted out equitably in reality, not just on paper, and — equally importantly — that it is perceived to be imposed equitably. Id. at 328. Other circuits have agreed that the defendant should be given an opportunity to speak freely and broadly about any mitigating fact that the defendant (not the court) deems relevant. See United States v. Li, 115 F.3d 125, 130-34 (2d Cir.1997) (right to allocute violated if defendant cannot “speak meaningfully of the factors that she legitimately thought relevant to the mitigation of her sentence” (emphasis added)); United States v. Burgos-Andujar, 275 F.3d 23, 29 (1st Cir.2001) (noting sentencing court should “allow the defendant to speak on all topics which the defendant considers relevant” (emphasis altered)). I find my colleagues’ opinion to *914 be inconsistent with the long line of eases supporting the historical office of the allo-cution right, which is to provide the defendant with an unfettered opportunity to present a plea for mercy. 1 Joseph Chitty, A PRACTICAL Treatise ON the Criminal Law 700 (London, A.J. Valpy 1816) (A defendant “addresses the court in mitigation of his conduct ... or casts himself upon their mercy.”); 4 William Blackstone, Commentaries on the Laws op England 368 (Univ. of Chi. 1979) (“[The defendant] is either immediately, or at a convenient time soon after, asked by the court, if he has anything to offer why judgment should not be awarded against him.”).
Because the court does not find plain error, it does not reach the question whether the court’s premature termination of Covington’s allocution prejudiced him. Since I would find that plain error occurred, I add a word about prejudice. To begin with, this is one of those situations in which prejudice is presumed. See United States v. Luepke, 495 F.3d 443, 451 (7th Cir.2007). But even apart from any presumption, the record here contains hard evidence of prejudice. The court used Covington’s responses to its questions — which centered around Covington’s suicidal tendencies and the implicit threat of another dangerous public suicide attempt — as fodder for imposing a higher sentence. Covington, however, was trying to explain why any such threat had dissipated. In order to do so, Covington wanted to sketch out his background, his service in the U.S. Army, his flashbacks to his combat experiences in Operation Desert Storm (including a bombing to which he had been exposed), and the relation between his substance abuse and his mental health problems, all for the purpose of showing why the therapy he was receiving from Dr. Farmilant had given him new insight into his problems and promised to be more successful than earlier rounds of treatment had been. He was never permitted to reach the last, critical point, nor was he allowed to show how his earlier problems were being successfully addressed through his current treatment. Indeed, Dr. Farmilant concluded that “it is unlikely that [Covington] will be a danger to the community upon release once his mood and anxiety issues are treated.” This relates directly to the district court’s finding that Covington could not overcome his mental health and substance abuse problems, and thus that as a danger to himself and others, a longer sentence was necessary. Covington’s inability to present his own account on the central issue of his likely future need for incarceration prejudiced him.
For these reasons, I cannot join the majority’s opinion. The facts do not bear out its characterization of the district court’s interventions, and the end result so clearly resulted in the deprivation of Cov-ington’s right of allocution that it qualifies as plain error. I therefore respectfully dissent.