**AFFIRM; Opinion Filed April 9, 2020**



In The

## Court of Appeals
## Fifth District of Texas at Dallas

### No. 05-19-00557-CR

### JAMIE RAY WATKINS, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 282nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F18-14134-S**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

Jamie Ray Watkins appeals from a conviction for burglary of a habitation with the intent to commit a felony. We affirm the trial court's judgment. Because all issues are settled in the law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

### BACKGROUND

Beginning in 2016, appellant lived with T.H., their child I.W., and T.H.'s other minor daughter T.C. On or about July 20, 2018, appellant and T.H. got into a heated argument, after which T.H. told appellant to leave the house. Appellant

packed some clothes and walked out of the house. T.H. followed appellant out of the house to ask for the house key, but appellant refused to give it to her. That evening, T.H.'s father changed the lock on the front door. The next day, appellant sent T.H. a series of text messages that began with apologies and ended with statements she perceived as threatening.

In the evening of July 22, T.H. heard a noise outside her bedroom window and looked out to see appellant's car parked in the driveway. T.H. called 9-1-1 and shouted to I.W. and T.C. to call their grandfather and other people for help. T.H. then saw appellant break in through the backdoor and charge towards her, so she and T.C. ran into I.W.'s bedroom where I.W. was awake watching videos on her phone. I.W. jumped off her bed and turned on the light. Appellant entered I.W.'s bedroom and punched T.H. several times before quickly leaving the house. T.H. called 9-1-1 again, and the police and T.H.'s father arrived at the house where they saw visible red marks on T.H.'s face.

Appellant was indicted for burglary of a habitation with the intent to commit a felony. The indictment also alleged appellant had a dating relationship T.H. and was a member of her household and that appellant had a prior conviction for a family violence offense. Appellant pleaded not guilty, and the case proceeded to trial before a jury. The jury found appellant guilty as charged in the indictment and sentenced him to twenty-two years' confinement. Appellant timely filed this appeal.

DISCUSSION

## I.   Denial of Mistrial

In his first issue, appellant argues the trial court erred in denying his request for a mistrial after T.H.'s father testified appellant had been incarcerated.

The complained-of statement took place during the prosecutor's examination of T.H.'s father:

> Q: …well, when did you come to learn about [T.H.'s] relationship with [appellant]?
>
> A: Actually, um, I think on the day that – um, that we actually knew of him was, uh, pretty much when my daughter told me that, um, she was pregnant and – um, but we didn't get to know of him really because it was kind of secretive, if you want to say.
>
> Q: Okay.
>
> A: But, um, didn't know him until – um, possibly of him really is, uh, when he got incarcerated.

At that point, defense counsel objected, and the trial judge dismissed the jury from the courtroom. Outside the presence of the jury, the prosecutor questioned T.H.'s father and established he had been instructed not to refer to appellant's prior incarceration. Defense counsel requested a mistrial based on "previous rulings of the Court concerning prior convictions and extraneous offenses." The trial court denied that request for mistrial and instead brought the jury back into the courtroom and issued an instruction to disregard T.H.'s father's last statement.

Our standard of review of a trial court's ruling on a motion for mistrial is abuse of discretion. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007).

We view the evidence in the light most favorable to the trial court's ruling and uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* We may not substitute our judgment for that of the trial court, but rather we decide whether the trial court's decision was arbitrary or unreasonable. *See id.* Thus, a trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the trial court's ruling. *See id.*

A mistrial is appropriate in "extreme circumstances" for a narrow class of highly prejudicial and incurable errors. *See Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Whether an error requires a mistrial must be determined by the particular facts of the case. *Id.* Because it is an extreme remedy, a mistrial should be granted "only when residual prejudice [would] remain[ ]" after less drastic alternatives are explored. *Id.* Less drastic alternatives include instructing the jury "to consider as evidence only the testimony and exhibits admitted through witnesses on the stand," and, questioning the jury "about the extent of any prejudice," if instructions alone do not sufficiently cure the problem. *Id.* Though requesting lesser remedies is not a prerequisite to a motion for mistrial, when the movant does not first request a lesser remedy, we will not reverse the court's judgment if any improper harm could have been cured by the less drastic alternative. *Id.*

Given the fact that the trial court gave a limiting instruction to the jury, it appears from this record that the trial court agreed with appellant that T.H.'s father's

statement was not admissible. *See* TEX. R. EVID. 404(b) (prohibiting admission of evidence of prior crime, wrong, or other act to show that on a particular occasion the person acted in accordance with the character). However, testimony referring to or implying extraneous offenses allegedly committed by the appellant may be rendered harmless by an instruction from the trial court unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind. *See Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992).

Appellant argues the complained-of statement was so prejudicial that a limiting instruction could not cure the harmful effect. As support, he relies on the fact that during their deliberations in the guilt-innocence phase of trial, the jurors sent a note that read, "Do we decide the sentence length? Do we need to decide that now? What are the procedures after the verdict? We are concerned about safety." Appellant urges that T.H.'s statement regarding prior incarceration must have had the speaker's desired effect of persuading jury that appellant was a bad person or criminal in general.

Review of the record establishes the jury heard evidence that appellant had threatened T.H., broken into her home, and physically assaulted her in front of her children. The jury also heard evidence that appellant had a prior conviction for assault domestic violence. Moreover, the complained-of statement was elicited after the prosecutor asked T.H.'s father when he came to learn about his daughter's

relationship with appellant. Viewing the complained-of statement in the context of the entire record, we cannot conclude it was so clearly calculated to inflame the minds of the jury or that it would be impossible for a curing instruction to remove the harmful impression from the jury's mind.

Accordingly, we conclude the trial court did not abuse its discretion in denying appellant's motion for mistrial. We overrule appellant's first issue.

## II.     Extraneous Bad Act or Crime

In his second issue, appellant argues the trial court abused its discretion in permitting the State to present evidence of an extraneous bad act or crime, that being his threatening his biological daughter I.W. by taking an aggressive stance during a heated argument with her mother.

At trial, T.C. testified regarding the heated altercation that occurred between appellant and T.H. two days before the offense. She stated that she and her sister I.W. were in the house and heard yelling and arguing coming from their mother's bedroom. According to T.C., she followed I.W. into the bedroom.

> Q. What did [I.W.] do when she got into the bedroom?
>
> A. She was trying to stop them from arguing and stuff, and then I had pulled her back 'cause he tried to buck at her like he was about to hit her. So I pulled her back and then my mom --
>
> Q. And when you say her, are you talking about [I.W.]?
>
> A. Yes, [I.W.]

Q. And buck at her. If -- uh, if I was from another planet and I was learning English for the first time and somebody taught me that phrase, buck at her, how would you explain what that means?

DEFENSE COUNSEL: Objection as to this line of questioning, uh, based on prior ruling of the Court concerning extraneous offenses. We received no notice of this. And we had prior objections and motion in limine concerning any extraneous offenses.

THE COURT: Overruled.

Q. You can answer the question. How would you explain what bucking at means?

A. Like this (indicating). Like -- I don't really know how to explain it, but I could show you. It like that (indicating).

Q. And when you're showing me 'cause I got to make a record of it. You're kind of puffing your chest out?

A. Yeah.

Q. Okay. Is that a position to sort of challenge somebody?

A. Yes.

Q. Okay. So you saw [appellant] buck at [I.W.]?

A. Yes.

Appellant objected to this evidence based on rule 404(b) of the Texas Rules of Evidence. Evidence of a crime other than the one charged is not admissible to prove a defendant's character in order to show that, on a particular occasion, the defendant acted in accordance with that character. *See* TEX. R. EVID. 404(b)(1). This evidence may be admissible, however, for a purpose other than character conformity, such as proof of a defendant's motive or intent. *Id.* 404(b)(2). We review the admissibility of an extraneous offense for an abuse of discretion. *Devoe*

*v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If the trial court's ruling is within the zone of reasonable disagreement, there is no abuse of discretion, and we will uphold it. *Id.*

Appellant argues that T.C.'s description of him "bucking" at I.W. constitutes evidence of the extraneous offense of assaulting his biological daughter. The State responds that this evidence goes to show appellant's motive and intent in committing the underlying offense: that he was so angry with T.H. he would threaten their biological daughter for intervening in the altercation between her parents and that he was enraged enough return to break into the house to assault T.H. We agree with the State and conclude the trial court's decision to admit the complained-of evidence is within the zone of reasonable disagreement. *See id.*

Accordingly, we overrule appellant's second issue.

In his third issue, appellant argues the cumulative effect of the errors alleged in his first and second issues is so harmful that reversal of the judgment is required. However, we have not determined there to be any errors as complained of in those issues. Accordingly, we overrule this issue. *See Rayford v. State*, 125 S.W.3d 521, 534 (Tex. Crim. App. 2003).

## III. Right to Allocution

In his fourth issue, appellant complains the trial court violated his common law right to allocution, such that he should receive a new punishment hearing. The term "allocution" refers to a trial judge's asking a criminal defendant to speak in

mitigation of the sentence to be imposed. *Williamson v. State*, No. 05-17-00411-CR, 2018 WL 388025, at *3 (Tex. App.—Dallas Jan. 12, 2018, pet. ref'd) (mem. op., not designated for publication); *see also Green v. United States*, 365 U.S. 301, 304 (1961) (recognizing common-law right of allocution). The State responds that appellant failed to preserve this issue.

The record reflects that at the conclusion of the punishment phase of trial, the trial court asked if there was any *legal reason* why sentence should not be imposed in compliance with the Texas Code of Criminal Procedure[1] before pronouncing sentence, but did not ask appellant whether he had anything to say in mitigation. However, to complain on appeal of the denial of the right of allocution, whether statutory or one claimed under the common law, controlling precedent requires that a defendant timely object. *See Gallegos-Perez v. State*, No. 05-16-00015-CR, 2016 WL 6519113, at *2 (Tex. App.—Dallas Nov. 1, 2016, no pet.) (mem. op., not designated for publication) (citing *Tenon v. State*, 563 S.W.2d 622, 623 (Tex. Crim. App. 1978) (panel op.); *McClintick v. State*, 508 S.W.2d 616, 618 (Tex. Crim. App. 1974)). Appellant did not raise this issue at sentencing or in his motion for new trial. Accordingly, we are compelled to overrule appellant's fourth issue.

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 42.07 (requiring that the defendant be asked, before sentence is pronounced, "whether he has anything to say why the sentence should not be imposed against him").

**CONCLUSION**

We affirm the trial court's judgment.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
190557F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JAMIE RAY WATKINS, Appellant

No. 05-19-00557-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 282nd Judicial District Court, Dallas County, Texas
Trial Court Cause No. F18-14134-S.
Opinion delivered by Justice Schenck. Justices Osborne and Reichek participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 9th day of April, 2020.